MOLLER-VANDENBOOM LUMBER COMPANY, A CORPORATION, RESPONDENT, v. FREDERICK C. BOUDREAU, APPELLANT.—85 S. W. (2d) 141.

St. Louis Court of Appeals.   Opinion filed July 16, 1935.

Appellant's Motion for Modification of Opinion for Rehearing Overruled September 10, 1935.

Petition for Mandamus and Petition for Writ of Certiorari Denied by Supreme Court October 18, 1935.

1128

*Rendlen, White & Rendlen* and *E. C. Hilbert* for respondent.

1130

*A. F. Haney, Moore & Fitch, Charles M. Lee* and *Staunton E. Boudreau* for appellant.

HOSTETTER, P. J.—This is a mechanic's lien suit which originated in the Circuit Court of Lewis County at Monticello, Missouri, by the filing of a petition on December 27, 1932. There were three defendants, viz.: John D. Holmes, Burrel M. Bradshaw and Frederick C. Boudreau; on application of defendant Boudreau the venue was changed to the Hannibal Court of Common Pleas.

The pertinent allegations of the petition were as follows:

That plaintiff, a corporation, was engaged in the sale of lumber and building materials and operated a lumber yard at Canton, Lewis County, Missouri, under the style and name of "Canton Lumber Company;" that defendant, John D. Holmes, was the owner of a 240 acre farm (describing it) situated in Lewis County; that while being the owner thereof he purchased of plaintiff, lumber and building materials to be, and which were, used in the construction of one frame building 24x40 feet, and eight brooder houses (describing them) on said real estate; that between the 14th day of April, and the 8th day of July, 1932, both inclusive, plaintiff sold and delivered to said Holmes, lumber and building materials at the price and reasonable value of $978.38; which were used in the construction of said buildings and that same were sold and delivered upon the faith and credit of the statutory lien; that its lien claim was filed in the office of the clerk of the Circuit Court of Lewis County, Missouri, at Monticello, on the 29th day of November, 1932; that on the 20th day of February, 1932, said Holmes made, and delivered to defendant, Burrell M. Bradshaw, trustee, a deed of trust on said real estate to secure to defendant, Frederick C. Boudreau, the payment of the sum of $13,000, as evidenced by seven promissory notes, which deed of trust was duly recorded in book 181 at page 401 in the office of the Recorder of Deeds of said county; that said deed of trust was an inferior lien to plaintiff's lien on said buildings; that plaintiff's demand became due on the 8th day of July, 1932, the date of the last delivery on said account; that defendant Holmes was a non-resident of Missouri.

In the prayer plaintiff asked for a judgment against said Holmes for $978.38, with interest from July 8, 1932, and costs and that same be declared a first and prior lien on said buildings.

The amended answer of Frederick C. Boudreau, on which the case was tried, contained the following:

An admission "that plaintiff is a corporation engaged in the sale of lumber and building material and maintains its yard and place of business in the town of Canton;" an admission that Holmes was the owner of the real estate; an admission that he made and delivered the deed of trust as described in the petition and that he is a non-resident of the State; a plea in abatement that defendant Boudreau transferred several parts of the seven notes described in said deed of trust to certain named parties prior to the filing of plaintiff's petition and to the filing of the lien claim and that such transferees were necessary parties to the suit; a general denial; a specific denial that the account was a just and true one; a specific denial that the lumber and building materials were sold on the credit and security of a mechanic's lien; an averment that since the filing

of the suit the farm on which the buildings were located was sold in foreclosure of the lien of said deed of trust and that defendant Boudreau became the purchaser at such foreclosure sale and acquired all the lien rights of the several parties to whom had been transferred some parts of the seven notes, and for that reason the priorities of such transferees between each other and plaintiff's claimed lien and defendant's title as foreclosure purchaser should be determined by the court as a court in equity; and lastly, that plaintiff sold said lumber and building materials to Holmes on his personal credit and not on the credit of any lien and not to be used in the construction of the described buildings, which had been completed prior to July and were known to plaintiff to have been so completed, and that such materials were used in repairing other buildings on said farm and that the account was not a just and true one and was known to plaintiff to be false and that plaintiff's claim to its lien was not made in good faith.

Plaintiff's reply was a general denial.

Defendant Holmes was served by order of publication and defendant Bradshaw was personally served, but neither filed any pleading and default judgment was entered against Holmes on the account.

The cause was tried by the court, a jury being waived by both plaintiff and defendant Boudreau. At the close of plaintiff's testimony, defendant Boudreau offered an instruction in the nature of a demurrer to the evidence, which was by the court refused, and, at the close of all the testimony defendant Boudreau offered a similar instruction in the nature of a demurrer to the evidence, which likewise was refused by the court, and the court, at the request of defendant Boudreau, gave instructions numbered 1 to 8 inclusive and refused said defendant's offered instructions numbered 9 to 14 inclusive.

The cause was duly submitted to the court on the 20th day of April, 1933, and taken under advisement, and, on May 12, 1933, the court announced its decision and filed its findings and judgment order, and, on June 8, 1933, modified its findings and judgment entry, which judgment as modified is, in substance, as follows:

That defendant Holmes was regularly and legally served by an order of publication and makes default; that defendants Bradshaw and Boudreau having been brought into court by personal service come by their attorneys and defendant Boudreau files answer, and the cause coming on for hearing is tried by the court, a jury being waived by plaintiff and answering defendants (Boudreau being the only defendant who filed answer), and, upon the pleadings and proof adduced, having duly heard and seen the pleadings and evidence offered in support thereof, and having given and refused instructions requested therein and having filed same, the cause having been taken

under advisement, the court finds that plaintiff has complied with all the requirements of Article III, Chapter 25, Revised Statutes Missouri 1929, and is entitled to a lien upon the structures and buildings herein described, being also described in plaintiff's petition and lien account, and finds that defendant Holmes is indebted to plaintiff upon a mechanic's lien account duly filed in the office of the clerk of the Circuit Court of Lewis County, Missouri, in the sum of $978.38, and that of this account items totaling $80.16, for 334 pieces of shiplap which were not incorporated in the buildings, should be deducted from the $978.38, leaving the amount of $898.22 due and owing from defendant Holmes to the plaintiff for materials entering into the structures upon which a lien is sought and the court further finds that at the beginning of said account the defendant Holmes was the owner of the real estate described in the petition (a 240 acre farm), but that prior to the filing of the lien account in the office of the clerk of the Circuit Court of Lewis County, the defendant Boudreau purchased said real estate at a foreclosure sale under the deed of trust described in the petition and that at said foreclosure sale said defendant Boudreau became the owner of said real estate; that the lien of the said deed of trust is superior to the lien of plaintiff as to the land described in said petition, but that the plaintiff has a lien on the buildings described in the petition for the amount of such materials used therein and that such lien is superior to the lien of the deed of trust as to said buildings (same being described as well as the 240 acre farm); that it is therefore considered and adjudged by the court that plaintiff have and recover from defendant Holmes the aforesaid sum of $898.22 with interest thereon from the 8th day of July, 1932, at six per cent, being the aggregate amount of principal and interest to that date of $942.12, together with costs of suit, to be levied on the property charged with the lien therefor, being the buildings and structures thereinbefore described, and that a special *fieri facias* issue therefor and that the said described buildings or so much thereof as may be necessary to satisfy the judgment, interest and costs, be sold by the sheriff under said special execution according to law governing sale of personal property under execution and that the purchaser at the sale held under said special execution shall have a reasonable time to remove the said buildings from the premises where they are now located.

Thereupon, in due time, defendant Boudreau filed his motion for a new trial, his motion in arrest of judgment, his motion for judgment notwithstanding the findings filed, and his motion for continuance of his after judgment motions, all of which were overruled by the trial court and defendant Boudreau brings the cause to this court by appeal for review.

We are fortunate in having very able and exhaustive briefs cover-

ing all the issues on both sides of the case. Counsel are in radical disagreement on whether or not the cause tried is one at law or in equity, defendant's counsel insisting that it is an equitable proceeding, whereas, counsel for plaintiff take the opposite view. The reason for this insistence being that if the cause be one in equity, we, as a reviewing court, would make our own findings on the evidence regardless of the findings made by the trial court, whereas, if it be one at law the findings of fact by the trial court cannot be disturbed by the reviewing court provided there be any substantial testimony on on which the trial court's findings may rest.

After a careful consideration we have reached the conclusion that the case is one at law. Prior to the enactment in 1911 of what are now Sections 3180, et. seq., Revised Statutes Missouri 1929, all suits to establish and enforce mechanics' liens were regarded as suits at law. [Western Brass Mfg. Co. v. Eidlitz, 74 Mo. App. 343, loc. cit. 355.] And the question of lien or no lien was one to be submitted to the jury, unless a jury was waived. [Williams v. Porter, 51 Mo. 440, loc. cit. 442; Sosman v. Conlon, 57 Mo. App. 25, loc. cit. 29.]

In Coerver v. Crescent Lead and Zinc Corporation, 315 Mo. 276, loc. cit. 285, 286 S. W. 3, the court said:

"Prior to this amendment (Laws 1911, pages 314 and 315) mechanics' liens suits generally were regarded in Missouri as actions seeking only legal relief, and our general rule was that beneficiaries in a deed of trust, whether prior or subsequent to the mechanics' lien should be made parties to the lien suit if their interests were to be affected. Section 7225, R. S. Mo. 1919 (Now Section 3165, R. S. Mo. 1929) was so construed, and in Hicks v. Schofield, 121 Mo. 381; Landau v. Cottrill, 159 Mo. 308, and a long unbroken line of decisions we so held."

Section 3180, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 3180, p. 5008), provides in substance that all controversies between mechanics' lien claimants and rights of priorities between all claimants of liens and interests may be determined in one suit by an equitable action.

Section 3182, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 3182, p. 5012), deals with cases where only one mechanic's lien is involved, as in the instant case, and is as follows:

*Equitable action not to apply, when.* This equitable action shall not apply to instances in which there is only one mechanic's lien claimed against the property and any of it, but in any suit thereon the court shall determine the respective priorities as between such mechanic's lien and any other lien or encumbrance and enforce the same accordingly."

In the Coerver case, *supra,* the court, in commenting on what is now Section 3182, Revised Statutes Missouri, 1929, says:

"Since the enactment of this statute one of the purposes of every mechanics' lien suit, where there is only one mechanic's lien claimed on the property and any other lien or encumbrance exists, has been and is to determine the priority of these liens, and *to this extent at least* a case becomes one in equity." (The italics are ours.)

Now, in the instant case, the plaintiff in its petition did not claim any lien on the land, but did claim a superior lien on the buildings over the existing deed of trust, averring for reason therefor, that the deed of trust was made, executed and delivered prior to the commencement and completion of the aforesaid described buildings on said premises and the evidence showed the correctness of this allegation.

By the provisions of Section 3159, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 3159, p. 4981), the lien for buildings and improvements has priority over a prior mortgage or encumbrance on the land upon which such buildings are erected, so that it being conceded that the deed of trust was given on the premises prior to the commencement and completion of the improvements for which the plaintiff claims a lien, there could be no controversy as to priority because said Section settled that question by its very terms. So that really, there was no issue between the plaintiff and defendant Boudreau as to priority which would require the intervention of equitable proceedings to determine same. Therefore, the very nature of the proceedings, in our view, was one at law and the case was properly tried as one at law in the lower court in consonance with the provisions of said Section 3182, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 3182, p. 5012).

The court's judgment recites that the cause "is tried by the court, a jury being waived by the plaintiff and the answering defendants." In addition to that, the defendant asked instructions, some of which were given and some refused by the trial court. The declarations of law have no place in equity proceedings. [Stilwell v. Bell, 248 Mo. 61, loc. cit. 64, 154 S. W. 85; Schibel v. Merrill, 185 Mo. 534, loc. cit. 550, 83 S. W. 1069; Brann v. Mo. State Life Ins. Co. (Mo. App.), 226 S. W. 48.]

Besides, parties are not permitted on appeal to treat the action different from the theory on which it was tried in the lower court. [Laughlin v. Gerardi, 67 Mo. App. 372; Kings Lake Drainage Dist. v. Winkelmeyer (Mo. App.), 62 S. W. (2d) 1101, loc. cit. 1103; Weston v. Fisher, 264 Mo. 250, loc. cit. 257, 180 S. W. 1038, 1039.]

It also appears that in the trial court the defendant's efforts and his testimony were all directed to denying that plaintiff had any valid lien whatsoever and that there was no controversy between the plaintiff and defendant on the question of priority. None of the numerous instructions asked by defendant related to priority but

1140

related solely to the alleged invalidity of the plaintiff's claim for any lien whatsoever.

No complaint was made in either the defendant's motion for a new trial or in arrest of judgment in respect to the action of the court in awarding the plaintiff's mechanics' lien priority as to the buildings over defendant's interest in the same; but the complaints in said motions were directed to the alleged improper recognition of plaintiff's claim as a lien at all. So that, the question of the priority of the lone mechanics' lien claim as to the buildings over defendant's interest in same was not really an issue in the cause.

Doubtless the existence of said Section 3159, Revised Statutes Mo. 1929 (Mo. Stat. Ann., Sec. 3159, p. 4981), which made it unlawful for defendant to have priority as to the buildings under the conceded facts of this case, prevented the question of priority from becoming in issue in this case.

Section 3159, Revised Statutes Missouri 1929, is a benign statute. It prevents one from reaping where he has not sown. A materialman, as in the instant case, might furnish materials with which valuable and lasting improvements are erected on the land and the party who had previously loaned his money on the naked land as his security, but for this statute, might hold these valuable buildings without paying anything therefor, and thus deprive the materialman of his property without any *quid pro quo*. However, the injustice and inequity which said Section 3159 was designed to prevent is in line with the time honored liberal interpretation which the courts have put on the mechanics' lien law long prior to the amendment of 1911, which provided in certain instances for equitable procedure.

In Smith v. Phelps, 63 Mo. 585, loc. cit. 588 (1876), our Supreme Court, speaking through Judge NAPTON, says: "In the mechanic's lien law it seems to have been the intent of our legislature to protect the title of the mechanic to a reimbursement for his expenditures in money or labor on the home he builds by giving him a right to the house, if all other means of remedy fail."

The same tender regard therein expressed for the mechanic who builded would apply with equal force to the materialman who furnished the materials which were used in the building.

The salient facts of the instant case are substantially as follows:

Defendant John D. Holmes, on February 20, 1932, gave the deed of trust on the 240 acre farm then owned by him to defendant Burrell M. Bradshaw as trustee to secure the payment of $13,000 to defendant Frederick C. Boudreau, evidenced by seven promissory notes therein described and the same was duly recorded in the office of recorder of deeds of Lewis County.

Thereafter, about April 1, 1932, defendant Holmes, the then owner of the farm, applied to one Walter E. White, the plaintiff's manager

of its lumber yard at Canton, Missouri, to purchase materials for the construction of the building in controversy and was referred by White to plaintiff's credit man at its headquarters in Quincy, Illinois, and, as a result of a conference between Holmes and said credit man, White was advised to sell to Holmes, building materials to the amount of $1000, which credit so extended, according to White's testimony, was based on Holmes' personal credit and the plaintiff materialman's rights under the mechanics' lien law.

In the latter part of April, 1932, the plaintiff began to furnish Holmes with building materials and continued at intervals to furnish same until July 8, 1932, on which date the last items were furnished.

White further testified that Holmes advised him that he wanted to build eight brooder houses and a building to be used temporarily as a tenant house; that he wanted to build eight or ten brooder houses. The tenant house was referred to by the witnesses as a garage.

It appeared from the testimony that some of the materials which had been ordered by Holmes about May 25, 1932, consisting of some drop siding and sashes, through some inadvertence or oversight, was not delivered at that time, although charged up in the bill as being furnished on that date, and the matter being called to the attention of manager White, he caused said materials, with others, to be delivered on the last delivery day, to-wit: July 8, 1932.

Not all of the material in the last delivery was used in the buildings, which the trial court found to be 334 pieces of shiplap of the value of $80.16 and deducted that amount from the total bill of $978.38, and established the lien on the buildings for the remainder.

The lien claim was filed on the 29th day of November, 1932, in the office of the clerk of the Circuit Court of Lewis County, at Monticello, and is as follows:

"Mechanic's Lien.

"Now at this day comes Moller and Vandenboom Lumber Company, a corporation, and with a view of availing itself of the benefit of the statute of mechanics and materialman's liens files the account below set forth for materials furnished by it under contract with John D. Holmes, owner, to, upon and for the building and improvements described as follows, to-wit:

"One frame building 24x40 feet, 8 feet high to eaves, roof, North and West sides thereof covered with Galvenized Iron, partitioned and one portion thereof floored; also, eight frame chicken or brooder houses 10x10 feet, 7 feet high in front, 6 feet high in back, all having rubberoid roofing and painted white, and situated on the following described premises, to-wit, The West Two Hundred and Forty (240) acres of the North half (½) of Section Twenty-one (21), Township

Sixty-two (62), Range Six (6) West, in the County of Lewis and State of Missouri, said premises, buildings and improvements belonging to and being owned by John D. Holmes, during all the time of the sale and delivery and use of said materials in said buildings, which said account, the same being hereby filed in order that it may constitute a lien upon the buildings and improvements above described, is as follows:

"Canton, Missouri, Nov. 26th, 1932.

"J. D. Holmes in account with
"Canton Lumber Company
"Wholesale and Retail Lumber
"Office and Yard
"Fourth and White Streets
"Phone 74
"W. E. White, Manager

(Here follows dates, items, and amounts, aggregating $978.38.)

"State of Missouri )
"County of Lewis )ss.

"Walter E. White, agent of Moller and Vandenboom Lumber Company, being duly sworn, on his oath says that the facts set forth in the foregoing statement are true and the same is hereby made a part of the affidavit that the foregoing is a just and true account of the demand due Moller and Vandenboom Lumber Company for materials furnished by said Moller and Vandenboom Lumber Company, upon, to and for the buildings and improvements heretofore described, after all just credits have been given; that said materials were furnished upon, to and for said buildings and improvements by Moller and Vandenboom Lumber Company at the instance and request of and under contract with John D. Holmes, owner; that the foregoing description of said buildings and improvements upon, to and for which said materials were furnished and to which this lien is intended to apply, or so near as to identify the same; that said demand accrued within six months prior to the filing of this lien, to-wit, on the 8th day of July, 1932; that said John D. Holmes, is, as affiant is informed and believes, the owner of the above described premises and the buildings and improvements thereon, which said above described buildings and improvements are intended to be charged with this lien; that John D. Holmes, owner, made, executed and delivered a deed of trust on the above described real estate, with other lands, to Burrell M. Bradshaw, trustee to secure the payment of 7 notes for the sum of $13,000.00, payable to Frederick C. Boudreau, due in........years after date, which said note and deed of trust are dated Feb. 20th, 1932, and recorded in the office of the

recorder of deeds in and for Lewis County, Missouri, in Deed Book 180 at page 401.

"Walter E. White.

"(Jurat attached dated November 29, 1932.)"

Shortly prior to the filing of said lien account a foreclosure sale was had under the deed of trust and defendant Frederick C. Boudreau became the purchaser at such sale and thereby the owner of the title to the 240 acre farm.

The appealing defendant urges that his instruction in the nature of a demurrer to the evidence should have been given. We must bear in mind that in determining the question as to whether a plaintiff has made a submissible case for the triers of fact, we must, for that purpose, treat the testimony adduced by the plaintiff as true and disregard all testimony conflicting therewith, and that plaintiff is also entitled to all reasonable inferences arising out of the testimony. [Butler County v. Boatmen's Bank, 143 Mo. 13, 44 S. W. 1047; Goodyear Tire & Rubber Co. v. Ward, 197 Mo. App. 286, 195 S. W. 75; Vincent v. Means, 184 Mo. 327, loc. cit. 341-343, 82 S. W. 96; Outcault Advertising Co. v. Mack (Mo. App.), 259 S. W. 511, loc. cit. 512; Hecker v. Bleish, 319 Mo. 149, 3 S. W. (2d) 1008; Niedt v. American Ry. Exp. Co. (Mo. App.), 6 S. W. (2d) 973; First Natl. Bank of Hamilton v. Fulton (Mo. App.), 28 S. W. (2d) 368.] Measured by this rule we hold that the demurrer to the evidence was properly ruled by the trial court.

Defendant urges against the validity of the filed lien account that the proof showed that the Canton Lumber Company, *a corporation,* was owned by the plaintiff and that plaintiff (which is a corporation), is seeking to establish a lien in its own name for materials furnished by the corporation, Canton Lumber Company.

This argument is unsound, and is not borne out by the testimony. There is no allegation in the pleadings, nor is there any proof in the record that the Canton Lumber Company, is, or was, a corporation. A fair conclusion is that it was a mere trade name used by the plaintiff for convenience in the operation and management of its lumber yard at Canton, Missouri. Defendant in his amended answer admitted the ownership of the lumber yard at Canton, Missouri, to be in the plaintiff, and that plaintiff sold the building materials to Holmes, but claimed that such materials were sold on Holmes' personal credit only and similar admissions are contained in instructions requested by defendant.

In Schroeter Bros. Hdw. Co. v. Croatian "Sokol" G. Assn. (Mo. Sup.), 58 S. W. (2d) 995, loc. cit. 1000, the requisites of a lien account are held to be as follows: "The lien account contemplated by the law 'is such a statement of the claim as fairly apprises the owner and the public of the nature and amount of the demand asserted

as a lien.' '' [State ex rel. O'Malley v. Reynolds, 266 Mo. 595, 182 S. W. 743, 745; Banner Lumber Co. v. Robson, 182 Mo. App. 611, 168 S. W. 244; Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, 40 S. W. 118, 60 Am. St. Rep. 544.]

The affidavit clearly shows that plaintiff corporation was the owner of the lumber sold and delivered to Holmes, and was seeking the lien therefor and not ''Canton Lumber Company,'' in whose name the account was made out. And such affidavit may properly be considered in explaining and clarifying the account and in determining its sufficiency. [Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, loc. cit. 56, 40 S. W. 118; Lumber Co. v. Edward B. Stoddard Co., 113 Mo. App. 306, loc. cit. 316, 88 S. W. 774.]

We conclude that the lien account, which we have set out heretofore, meets the acid test prescribed, and fully apprises the owner and the public of the nature and amount of plaintiff's demand and of its desire and purpose to have it established as a lien on certain described buildings located on certain described premises.

Defendant contends that the lien account is not a just and true one, on the ground that some of the items listed in the last two deliveries were not lienable because they were not used in the construction of the buildings. The trial court did find that there were some items in the last delivery of July 8, 1932, amounting to $80.16, being 334 pieces of shiplap, contained in the lien account which were not used in the construction of the buildings and they were excluded. However, in the absence of any showing of fraud or bad faith and where the non-lienable items are separable from the balance of the account and their inclusion is through inadvertence, or is the result of an honest mistake and no one has been injured or misled thereby, it is ruled that such inclusion does not invalidate the entire lien. [Schroeter Bros. Hdw. Co. v. Croatin ''Sokol'' G. Assn. (Mo. Sup.), 58 S. W. (2d) 995, loc. cit. 1000; Cooper Supply Co. v. Rolla Nat. Bridge Co. (Mo. App.), 66 S. W. (2d) 591; Allen & Co. v. Mining & Smelting Co., 73 Mo. 688, loc. cit. 693.]

It is contended by defendant that the brooder houses were personal property and removable and therefore not lienable; and, as a logical sequence, that the lien account was not a just and true one.

There was no testimony adduced as to the manner in which the brooder houses were attached to the realty, if at all. It is a matter of common knowledge, of those familiar with rural life, that such buildings are generally small ones and, necessarily so, because it is the home of the hen and her brood. They may or may not be attached to the soil. But the natural inference is that when built on a certain farm they are designed to remain there. True, like other small buildings, even the homes of humans, they could be removed even though on foundations or otherwise attached in a per-

manent way to the soil. So that the removability of a structure is not the sole test of whether it is real property, personal property, pure and simple, or a fixture. The question of intention is very important and ofttimes controlling in solving this problem. Holmes was a non-resident of Missouri when the suit was brought and as he didn't take the brooder houses away with him, as he had a right to do if they were personal property and he regarded them as such, it is a legitimate inference that he regarded them as fixtures and as having become a part of the realty.

Defendant Boudreau, after the foreclosure sale under the deed of trust, succeeded Holmes as owner of the brooder houses, if they were fixtures; otherwise, he did not become the owner, because title to them as personal property could not pass at the foreclosure sale.

According to the testimony, defendant Boudreau had moved into the premises after Holmes moved out of the State. In Boudreau's cross-examination, in answer to questions about his getting the buildings and the lumber without having paid anything therefor, he replied: "It is on my property and I think it is going to stay there." An appreciable portion of the income from a farm is derived from poultry and poultry products, hence the brooder houses became a valuable addition to the farm.

So that, the trial court, having thus learned the attitude of the present owner (defendant Boudreau) and the former owner (Holmes), had sufficient testimony from which it could properly arrive at the conclusion that it was the intention of both that the brooder houses were fixtures and a permanent accession to the farm, and, therefore, properly subject to the lien. [Security Stove & Mfg. Co. v. Stevens (Mo. App.), 9 S. W. (2d) 808; McCarthly Lumber & Const. Co. v. Kinder (Mo. App.), 225 S. W. 1024.]

The 19th and 20th assignments of error made by defendant are, first, that the court erred in overruling defendant's motion for a continuance of his after judgment motions, and, second, that it likewise erred in refusing to consider, or permit to be filed, the affidavits of H. I. Taylor and Frederick C. Boudreau, tendered by defendant at the hearing of his several after judgment motions after the court had refused to entertain his motion to continue same.

The cause was heard by the court on April 20, 1933, and the findings and judgment were entered on May 12, 1933, and thereafter the motion for a new trial and the motion in arrest were filed, also a motion for judgment, notwithstanding, the court's finding of facts, and, on the 8th day of June, 1933, defendant filed a motion for a continuance of his after judgment motions, setting up fourteen grounds in support thereof.

At the time of the hearing of all these motions defendant presented two affidavits, one of H. I. Taylor and the other of defendant

Boudreau and requested the court to consider them in ruling on all of said motions. This, the court refused to do. Both affiants had testified on behalf of defendant at the trial of the cause at some length and much of the contents of the proffered affidavits appeared to be an amplification of their testimony given at the trial.

These matters complained of rested in the discretion of the trial judge and we do not find that he has abused his discretion in thus disposing of them.

Other assignments of error relate to the sufficiency of proof as to divers and sundry matters deemed necessary for plaintiff to show in order to establish its claim as a lien against the buildings. Many of these are contained in the eight instructions given by the court at the request of defendant and in his six proffered instructions which were refused. These complaints may be catalogued in substance as follows; viz.:

That if the garage was completed prior to July 8, 1932, and, if built as a separate undertaking from the eight brooder houses, then the finding should be for the defendant Boudreau; that it should be shown that substantially all the items purchased as set out in the lien account, were, in fact, used in the construction of the buildings in order to make the lien account a just and true one; that if the items shown in the lien account as having been purchased on July 8, 1932, were not used in the construction of the buildings, the plaintiff could not recover; that if the items sold and delivered by plaintiff to Holmes were sold and delivered on Holmes' personal credit only, then plaintiff could not recover; that unless plaintiff has established its right to a lien for substantially all the items in its lien account, then it should not recover.

That, as a matter of law, it was necessary for plaintiff, in order to recover to establish the following facts:

(a) That all the material was purchased under one and the same contract;

(b) that the charges were reasonable;

(c) that no payment had been made on the items contained in the lien account;

(d) that the buildings were not completed prior to July 8, 1932;

(e) that substantially all the items including the items of July 8, 1932, contained in plaintiff's accounts were used in the construction of the buildings;

(f) that all the buildings were built as one undertaking and not as separate undertakings;

(g) that the materials were sold on the credit of a lien on the buildings, and

(h) that unless plaintiff has established each and every one of the above enumerated matters it is not entitled to recover. (The

above list of requirements from (a) to (h), inclusive, is contained in defendant's given instruction No. 7.)

It is apparent that the determination of these assignments of error (many of them repetitious and overlapping each other), depends on the testimony adduced and the weight accorded by the trial court to same. As stated hereinbefore, we, as a reviewing court, cannot interfere with the findings of the trial court, nor disturb them on the ground that they might be, in our judgment, against the weight of the evidence. It is the province of the trial court to pass on the weight of the evidence and the credibility of the witnesses and it occupies a much superior vantage ground for the proper determination of those questions than does the reviewing court. However, we have made a careful and full examination of the record and have reached the conclusion that there is sufficient, substantial testimony disclosed therein to support the findings of the learned trial judge.

It follows that the judgment of the trial court should be affirmed, and it is so ordered. *Becker* and *McCullen, JJ.*, concur.