**UNITED PACIFIC INSURANCE COMPANY, Appellant (Third-Party Defendant below),**

**Williamette Construction Company, Appellant (Defendant below), et al., (Defendants below),**

**Jackson Hole Ski Corporation, Appellant (Defendant and Third-Party Plaintiff below),**

**v.**

**MARTIN AND LUTHER GENERAL CONTRACTORS, INCORPORATED, et al., Appellees (Plaintiffs below).**

**No. 3644.**

Supreme Court of Wyoming.

June 16, 1969.

Kline, Tilker & Lynch, Cheyenne, and Kobin & Meyer, Portland, Or., for appellant, United Pac. Ins. Co.

David Norman Burns, Jackson, for appellants, Willamette Const. Co. and Jackson Hole Ski Corp.

Hufsmith & Gowen, Jackson, and Nordhaus & Moses, Albuquerque, N. M., for appellee, Martin and Luther General Contractors, Inc.

Richard E. Day, of Wehrli & Williams, Casper, for appellee, First Nat. Bank of Casper.

Robert N. Chaffin, U. S. Atty., and Leroy V. Amen, Asst. U. S. Atty., District of Wyoming, for appellee, United States of America.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

In July 1963 Willamette Construction Company was engaged by Jackson Hole Ski Corporation, owner, to construct an aerial tramway and chairlift facility on its property and that of the United States at Jackson, Wyoming. Subsequently, by a complaint filed March 10, 1965, Martin and Luther General Contractors, Inc.,[1] sought personal judgment against Willamette for $111,511.77 and requested that such sum be decreed a lien upon property pursuant to a mechanics' lien theretofore filed on real property of the owner-corporation. Willamette, answering for itself and the owner, admitted that Martin and Luther had supplied work and material on some of the property involved for the aerial and work trams but put in issue the allegations of the validity of the lien and presented certain affirmative defenses, setoffs, and counterclaims, which in essence alleged that Martin and Luther did not complete its contract; caused expensive and extensive delays which increased costs tremendously; failed to notify Willamette of expenses; failed to pay its bills as it had agreed; failed to build the construction as planned and that work performed had been done in an unworkmanlike manner; unreasonably allowed liens to be placed against the property of the owner; was careless and negligent in the handling of the construction; and knowingly allowed conflicting work to interfere with the construction of the aerial and work trams, and sought damages because of various alleged breaches of Martin and Luther's con-

tract for the Jackson work and the willful breach of an agreement to enter into a joint-venture contract for the construction of a tram at Sandia Mountain, New Mexico, having intentionally made use of Willamette's special skills and knowledge in the engineering and design of the tram.

During the pleading stages certain claims of those who had supplied Martin and Luther were injected by counterclaims; separate suits on matters of that nature were filed; and United Pacific Insurance Company, which had indemnified Jackson against liens, was made a party to the main suit. Additionally, Martin and Luther filed a suit against Willamette and one of its managers for libel. All of the mentioned matters were consolidated for trial, and after extensive hearings the court entered judgment:

1. For Martin and Luther against Willamette in the sum of $69,187.50 and interest at 7 percent from January 1, 1965.

2. For Tom and John Lamb against Martin and Luther for $7,598.49 with interest at 7 percent from January 1, 1965.

3. For Interstate Helicopters, Inc., against Martin and Luther for $21,166.65 with interest at 7 percent from January 1, 1965.

4. Impressing the judgments mentioned in paragraphs one and two above as concurrent liens on the property.

5. Dismissing Martin and Luther's libel claim against Willamette.

6. Dismissing Willamette's counterclaims against Martin and Luther.

7. Ruling that United take nothing on its cross-complaint against Martin and Luther.

8. Ruling for United on its cross-complaint against Willamette in the sum of $610,332.15, together with interest at 7 percent, computed upon the sum of $541,144.65, from January 1, 1965.

9. Giving judgment for Jackson against United for $69,187.50, plus interest at 7 percent from January 1, 1965.

1. After first mention, shortened names of the parties are employed throughout the opinion.

10. Ordering that the claims of Cy Tjomsland d/b/a Dubois Electric, Richard Equipment, Inc., and Teton Crane and Transport Co., be severed from the consolidated case, that additional evidence be taken thereon, and that the trial on such claims continue.

From this judgment, Willamette and Jackson have appealed, alleging:

(a) The trial court erred in overlooking the duty of Martin and Luther's making every effort possible to minimize costs.

(b) The trial court erred in finding the reasonable value of the work performed by Martin and Luther in two respects, first, the standards which the court applied to determine such reasonable values were erroneous, and second, the court completely overlooked uncontroverted evidence concerning the reasonable value of what work was actually performed by Martin and Luther.

(c) The trial court either erred, was in total abuse of its judicial discretion, or inadvertently overlooked the substantial claim of Willamette against Martin and Luther for reimbursement of expenses of the breach of a joint venture agreement for the construction of the Sandia tram.

(d) The trial court erred in severing certain claims so that they might still be made the subject of a lien claim against property of the owner and thereby vicariously against Willamette under its duty to protect the property.

United Pacific has also appealed from the judgment of the trial court, urging:

(1) Martin and Luther is not within the class of persons entitled to the special benefits of the mechanics' and builders' lien statute.

(2) The court erred in refusing to invalidate the lien claim of Martin and Luther despite its findings that there were gross overstatements of the account knowingly made.

(3) Where nonlienable items are included in the lien demand and are so com-mingled so as not to be separable, the entire lien is invalidated.

(4) Martin and Luther failed to sustain its burden in proving the reasonable value of its lien, and the court therefore erred in setting the amount.

(5) The court erred in including many items which are nonlienable under § 29-4, W.S.1957, C.1967.

(6) The inclusion of the amount of the claim of Interstate in the decree of foreclosure was error. •

(7) Prejudgment interest is not recoverable on an unliquidated lien.

(8) The court erred in allowing the Lambs' lien in whole or in part in that it contained items of a lienable and nonlienable nature which could not be readily separated.

## ERRORS CHARGED BY WILLAMETTE AND JACKSON

### Duty to Minimize Costs

Although Willamette and Jackson charge that the court erred in overlooking the duty of Martin and Luther to make every possible effort to minimize costs, this criticism can scarcely be taken seriously since the memorandum opinion stated, "Martin & Luther had a duty at all times to minimize costs," with which observation we unreservedly agree. It follows that these appellants must have intended to say that the court failed to apply the maxim which it pronounced and gave less than adequate consideration to various items which were improper or which were overcharges. A list of these is attached to the brief but we deem it unessential to analyze or discuss such entries at this time since they deal with the situation negatively while the next charge of error approaches the claimed improprieties of the judgment from a positive aspect by saying that an unreasonable value was placed on the work performed. The net result of any determination would be the same regardless of whether it was reached by inclusion or exclusion, and we therefore consider the matters together.

### Unreasonable Value

These appellants argue that the court erred in finding the reasonable value of Martin and Luther's work in that the applied standards were wrong and further that the court completely overlooked pertinent uncontroverted evidence. Their argument is that in order for claimant to establish entitlement to a lien it was obliged to show it had actually improved the value of the property, the value of the lien being the reasonable value by which such improvements benefited the property citing Kaiser Aluminum & Chemical Sales, Inc., v. Hartford Accident & Indemnity Co., W.D.Mo., 117 F.Supp. 471, and Barker & Stewart Lumber Co. v. Marathon Paper Mills Co., 146 Wis. 12, 130 N.W. 866, 36 L.R.A.,N.S., 875. A careful analysis of these cases discloses no support for appellants' position therein. Of interest, however, are the following Missouri cases:

"* * * There is no contractual relationship between him [subcontractor] and the landowner. The landowner has never agreed to pay the subcontractor anything and is not personally indebted to him. It is only by reason of the mechanic's lien statute that the property may be subjected to the payment of the lien claim. In this situation the lien is not necessarily for the contract price but is only *for the reasonable value of the labor and materials furnished.* Kling v. Railway Construction Co., 7 Mo.App. 410." (Emphasis supplied.) Mississippi Woodworking Company v. Maher, Mo. App., 273 S.W.2d 753, 755.

"* * * generally * * * where the contract for construction of the building is for a sum in gross, the items of work and materials need not be filed; but these rulings do not apply where work has been done at the instance of a contractor. * * * The reason is, that where the contract is with the owner for a round sum of money, he can need no itemized account; but where the contract of the workman, though for a round sum, is not with the owner, but

with a subcontractor, *the contractor cannot bind the building for more than the materials furnished on the credit of the building are fairly worth,* and it is therefore important that the owner should be informed as to the particulars of the demand, that he may inquire as to the justice of the claim. * * *" (Emphasis supplied.) Kling v. Railway Construction Company of Carondelet, 7 Mo.App. 410, 411.

The problem in this posture of the case is whether or not the trial court had before it substantial evidence to determine the reasonable value of the subcontractor's work. Monarch Lumber Company v. Wallace, 132 Mont. 163, 314 P.2d 884, dealing with a situation somewhat similar, holds that reasonable value of materials furnished is evidenced by sales slips which were original entries made at or near the time of the particular transactions and in the regular course of business and true statements of goods sold and delivered, saying, 314 P.2d at 887, "The cases are in accord that such evidence is relevant and material and sufficient to make out a *prima facie* case of the reasonable value of the materials furnished." In Lenslite Co. v. Zocher, 95 Ariz. 208, 388 P.2d 421, 424, the court said, "The billing price submitted * * * and the amounts paid are evidence of the costs and the reasonable value of the labor and materials which went into the job, and therefore, are admissible in evidence. The contract price is admissible on the issue of reasonable value and constitutes prima facie proof of the issue."

■ Appellants are mistaken in their concept that in order to establish the lien the claimant must show the improvement in value of the premises to the owner. The owner is, of course, free to introduce evidence which will contradict plaintiff's prima facie evidence regarding labor and materials, and the function of the trial court was to determine the weight and sufficiency of such evidence in arriving at the amount of the lien. In that connection, we note the reference which appellants have made to the trial court's statement that on

the basis of Routh v. State Highway Commission, Wyo., 402 P.2d 706, 712, it was not precluded from employing its knowledge and experience with respect to reasonable value. The record does not indicate that in this instance the court was compelled to rely upon its own knowledge or experience or actually did so rely thereon as a primary source of reasonable value, which would, of course, have been impermissible as indicated in Heal v. Stoll, 176 Wis. 137, 185 N.W. 242, on which the Routh case relied for authority, but the mentioned factors were available for the evaluation of evidence which had been presented to it. We deem the court to have had substantial evidence before it upon which it could predicate the reasonable value of the labor and materials for which the lien was adjudged.

### Breach of Joint Venture Agreement

■ Preliminarily it must be noted that in this litigation reference has been made to a joint venture as relates to two separate and essentially different situations which do not necessarily have any direct bearing on each other. The one relates to the dealings between Willamette and Martin and Luther concerning the Sandia tram, which was the subject of counterclaims of Willamette against Martin and Luther and is alluded to in this appeal by Willamette, and the other is the relationship of the two parties as far as the Jackson project is concerned. We here address ourselves to the relationships affecting the Sandia tram. Willamette argues that the court was in total abuse of its judicial discretion, or inadvertently overlooked the substantial claim in this aspect, and we are inclined to think that there is merit in the argument. If the claim was not overlooked, it was at best seriously confused in the proceedings. In the first part of the memorandum opinion dealing with the joint venture, mention is made as to evidence on that aspect as it concerned the Jackson tram, but nothing was said about the Sandia project, and later in the memorandum the statement pertaining to the counterclaims contained nothing

regarding Sandia and was at best ambiguous:

"In Willamette's answers in original Cases No. 1578 and 1579, it asserts three identical counterclaims against Martin & Luther. The court finds generally for Martin & Luther and against Willamette on the three counterclaims and finds specifically that Willamette has not sustained the burden of proof and shown the court that alleged corrective work done by Willamette was because of the conduct of Martin & Luther."

Whether such statement intended to say that each of the three counterclaims was identical or that the counterclaims were similarly alleged in Cases 1578 and 1579 is unclear, and in any event, no separate finding is made as to the counterclaims which related to the Sandia project. This left Willamette in an anomalous position where it could no nothing more than speculate as to what the finder of fact had in mind. It similarly places this court at an extreme disadvantage. Strangely enough, the argument on this phase of the case is unanswered by Martin and Luther's counsel.

Any intelligent disposition of the litigation here requires that the cause be remanded for determination of the counterclaims referring to the Sandia project.

### Severance of Claims of Dubois Electric, Richard Equipment, and Teton Crane and Transport Co.

■ Willamette and Jackson raise an important question when they argue that the court erroneously ordered the claims of Dubois, Richard, and Teton to be severed from the case, that additional evidence be taken on such claims, and the trial of them continued. In its original judgment the trial court dismissed the three claims but after argument of counsel in supplementary memorandum stated that examination showed competent evidence had not been before the court allowing it to determine the legal effect of a compromise and settlement of the lien claims by United and entered an order severing these claims from

the consolidated case and ordering the trial on the claims continued. Little would be gained by alluding to or analyzing the contentions of the different parties as to the legal effect of the compromise by United, which the claimants' counsel admitted to have been made, since the order that the trial continue was fatal to the finality and appealability of the judgment in the cause. Wheatland Irrigation District v. Two Bar-Muleshoe Water Company, Wyo., 431 P.2d 257, 259; State ex rel. Pacific Intermountain Express, Inc., v. District Court of Second Judicial District, Sweetwater County, Wyo., 387 P.2d 550, 552; Reeves v. Harris, Wyo., 380 P.2d 769, 770. The supplementary memorandum opinion stated, "In examining the files and evidence admitted, it appears that there is no competent evidence before the court to consider and determine the legal effect of such compromise and settlement, if any." This statement as well as the preceding argument of various counsel indicated the impropriety of an express determination that there was no just reason for delay of the judgment until the claims were settled unless the court should prior thereto have resolved the ultimate liability of the property owner against whom the liens had been filed. In any event, however, there was no compliance with Rule 54(b), W.R.C.P., and the judgment was accordingly not final or appealable.

### ERRORS CHARGED BY UNITED

#### Joint Venture

■ We have extreme difficulty in following the argument of United that Martin and Luther was in a joint venture or partnership with Willamette on the *Jackson project*. Counsel acknowledge that in its answer Willamette had admitted Martin and Luther to be a subcontractor but goes on to recite the possibilities of other contracts, the travel and expense, and various preliminary discussions which are contended to show a joint venture between the parties. As indicated previously herein the question of whether or not a joint venture

existed between the mentioned parties as related to the Sandia undertaking is still open. Such, however, can hardly be the case on the Jackson construction. Admittedly, the parties did give consideration to a joint venture and even went so far as to prepare a rough draft of a proposed agreement to accomplish this. However, it was unsigned and there is no showing whatever that the parties ever agreed to its terms. As we interpret the record, there was no substantial evidence to show either a partnership or joint venture on the Jackson project and to the other effect was the repeated statement by Willamette, both in writing and otherwise, that Martin and Luther was a subcontractor.

#### Error in Refusing to Invalidate Lien Claim

■ Appellant insists § 29–11, W.S.1957, C. 1967, which provides that every person seeking to obtain the benefits of the lien statutes shall within the prescribed time file with the county clerk "a just and true account of the demand due him * * * after all just credits shall have been given," requires at the least that a reasonably accurate account of the amount due be stated. Appellant further points out that § 29–19, W.S.1957, C. 1967, a statute unique to Wyoming and not existing in Missouri, although stating that the inclusion of charges not properly within the account shall not invalidate the lien provides, "[the claimant] may omit any and all such charges incorrectly entered or entered by mistake, and may proceed to enforce a lien for the balance," which last-mentioned clause by fair interpretation places an obligation upon the claimant to eliminate incorrect items at the time suit to enforce the lien is filed. Counsel contend that the gross and intentional overstatement by inclusion of lienable and nonlienable items cannot be equated with good faith and therefore the lien must fail in its entirety. A number of cases are cited on the general principle but reference to one, which is typical and on which perhaps greatest reliance is placed, is ample to resolve the point when it makes clear the im-

portance of intention in any discussion of the problem:

"It is generally recognized that a lien statement may be regarded as 'just and true', so as not to vitiate the entire lien, even if it contains mistakes or errors of omission, and includes nonlienable items of charge, *if those inaccuracies of fact are unintentional and are the result of honest inadvertence, accident, or oversight, and do not result from deliberate intention or design.* * * *

"On the other hand, it is equally fundamental doctrine that when nonlienable items are included in a lien statement deliberately, knowingly and intentionally, 'then the account so filed may not be regarded as "just and true" within the meaning of the statute, and can form no basis for the adjudication and establishment of a lien for any part of the account.' Reese v. Hoyer, Mo.App., 95 S.W. 2d 884." Putnam v. Heathman, Mo.App., 367 S.W.2d 823, 828–829.

For the present, it is not requisite to determine whether § 29–19 would alter the rule in the Putnam case, but even assuming arguendo that it would not, this aspect of the appeal turns not on a rule of law but rather upon the correctness of the court's finding of fact. Referring to the "True Account of Demand for Labor and Materials Lien" filed by Martin and Luther, the court minimizes the account's incorrectness, saying:

"The lien claim filed by Martin & Luther contains some errors and improper charges and is not letter perfect. The lien claim represents the total of hundreds of individual back-up items. Accountants of both parties spent weeks prior to trial examining the lien claim and supporting data. Some of these same accountants produced extensive testimony in almost five weeks of trial. Considering the complicated nature of the accounting problem, it is understandable that some errors would appear in the lien claim and some improper entries would be included."

Notwithstanding the casual reference to "errors and improper charges" of the claimant, the memorandum opinion subsequently listed the following items as improper:

| | |
|---|---|
| Tools, equipment, materials, and supplies wasted or not properly accounted for by Martin and Luther, including unreasonable idle time for rented equipment and improper equipment rental charges | $10,000.00 |
| Officers' salaries and other salaries charged by Martin and Luther for work performed prior to its arrangements with Willamette for the Jackson work | 1,136.75 |
| Officers' salaries in connection with tramway job | 3,598.75 |
| Travel expenses | 1,120.86 |
| Air travel | 1,123.50 |
| Telephone charges | 1,205.54 |
| Trailer house for Martin and Luther's superintendent and office supplies | 726.59 |
| Overcharge for crane rental | 1,209.50 |
| Salary of Sam Sherrard earned after he left job | 557.50 |
| Lamb credit not extended to Willamette | 541.89 |
| Overcharge for profit and overhead | 3,544.80 |
| TOTAL | $24,765.38 |

These amounts are in addition to the deletion as improper charges of $5,430.13 by stipulation of plaintiff's counsel after evidence had been introduced to question the claims. United maintains that the burden to establish good faith is upon the claimant in the face of an overstatement which is a gross exaggeration, citing E. S. Gaynor

Lumber Co. v. Morrison, 75 S.D. 132, 60 N.W.2d 83; and we recognize Sacchetti v. Recreation Co., 304 Mich. 185, 7 N.W.2d 265; Currier Lumber Co. v. Ruoff, 298 Mich. 505, 299 N.W. 163, to a similar effect.

■ Although at first blush the court's holding that due to the large amount involved and the complicated nature of the accounting problem the errors in claimant's account were "understandable" would seem inconsistent with the subsequent elimination in the same opinion of the sum of $24,765.38 as nonlienable plus $5,430.13, which had been stipulated by claimant to be improper charges, the background of the transaction is integral to any determination. It must be remembered that the court early in its memorandum opinion had said, "It is difficult * * * to understand why two experienced and apparently competent construction firms would enter into such a loose arrangement and rush headlong into the project without an adequate agreement and better preparation. Apparently in July, 1964, both parties were anxious to get started in Teton County, Wyoming. Willamette had a contract to construct the tramway and a deadline to meet. Martin & Luther had a contract to construct the Teton Lodge in the same area and had indicated to Willamette that generally they were 'flat on work.' " A careful reading of the record indicates the justification which the court had for such an observation and also that the owner's representatives were frequently on the job and fully cognizant of the situation. Under those circumstances the determination of what was properly lienable was far from a routine matter. We are mindful of counsel's argument that this facet of the appeal turns on the legal effect of the court's finding rather than the correctness of the finding. However, the two cannot well be divorced. All of this leaves us unwilling to say that the court erred in its finding of fact on this aspect in rejecting the claim of intentional wrongdoing by claimant and in refusing to invalidate the claim for gross overstatements knowingly made or that the legal effect of the finding was misinterpreted.

■

*Invalidation of Lien by Commingling of Lienable and Nonlienable Items*

Appellant advances as reversible error the court's failure to hold the entire lien invalid by reason of the commingling so as not to be separable nonlienable and lienable items. The cases cited as authority for the suggested principle are not convincingly applicable to the instant situation, e. g., Major v. McVey, Mo.App., 128 S.W.2d 347, 351:

"We find that the criticism of the validity of the mechanic's lien pointed out by counsel for defendants is justified to such an extent as to render it invalid as a mechanic's lien claim. Its lack of proper *itemization,* its blending of lienable and nonlienable items, its lump sum charges, etc., are clearly, under the authorities, such defects as to render it incapable of being enforced as a mechanic's lien." (Emphasis supplied.)

We emphasize the word which we consider important rather than "blending," "lienable," and "nonlienable," as does counsel.

■ Carthage Superior Limestone Co. v. Central Methodist Church, 156 Mo.App. 671, 137 S.W. 1028, also relied upon, makes it clear that the purposely intermingling of lienable and nonlienable items is the basis for the vitiation of the lien there. In the instant situation, the court did not find that the items had been purposely intermingled and counsel points to no proof of this except an intimation that Martin and Luther's incorporation in the lien of items which the court later disallowed and that company's refusal to concede impropriety of the inclusion until the evidence was adduced against it constituted proof of the wrong intention.

The principle which governs this aspect of the case is well stated in Moller-Vandenboom Lumber Co. v. Boudreau, 231 Mo. App. 1127, 85 S.W.2d 141, 148:

" * * * in the absence of any showing of fraud or bad faith and where the nonlienable items are separable from the balance of the account and their inclusion is through inadvertence, or is the result

of an honest mistake and no one has been injured or misled thereby, it is ruled that such inclusion does not invalidate the entire lien. Schroeter Bros. Hdw. Co. v. Croatian 'Sokol' G. Ass'n, 332 Mo. 440, 58 S.W.2d 995, * * * 1000; Harry Cooper Supply Co. v. Rolla Nat. Bldg Co. (Mo.App.) 66 S.W.2d 591; Allen & Co. v. Frumet Mining & Smelting Co., 73 Mo. 688, * * * 693."

To a similar effect is Harry Cooper Supply Co. v. Gillioz, Mo.App., 107 S.W.2d 798, 802.

▉▉▉ We can agree with the rule which is called to our attention from D. H. Overmyer Warehouse Company v. W. C. Caye & Company, 116 Ga.App. 128, 157 S.E.2d 68, that if lienable items can be separated from those which are nonlienable in a foreclosure proceeding the burden of doing so is on the claimant. Appellant insists that Martin and Luther did not attempt to assume this burden but intentionally refused to do so thereby obligating United to produce the best evidence to support not only the contention of nonlienability but the amount thereof. We are inclined to think that this may have been the case and that had United elected to rely on the mentioned rule from D. H. Overmyer Warehouse Company and made an issue of that aspect plaintiff's proof might have been insufficient to sustain a judgment for it. However, such procedure was not followed but instead United and Willamette proceeded with evidence which we consider in the present state of the record to be sufficient upon which the court could predicate a finding as to which items were lienable and which nonlienable. Accordingly, we find no error in this aspect.

### Martin and Luther's Failure to Sustain Its Burden in Proving Reasonable Value

▉▉▉ We pass then to the assertion of appellant that Martin and Luther failed to sustain the reasonable value of its lien and accordingly the court erred in setting the amount. On this point we advert to the question which we discussed in a similar feature of the opinion pertinent to Willamette and Jackson, namely the court's saying that the trier of fact is not precluded from employing its own knowledge and experience with regard to reasonable value. Appellant correctly says that the Routh case is not authority for the proposition that the trier of fact may furnish its own opinion where vital evidence is lacking but rather may utilize its own experience in weighing the opinions of experts who have disagreed on a point. From the context of the opinion and judgment we are disposed to believe that the trial court here applied the Routh case in that sense.

After citing several cases tending to hold that reasonable value of labor and materials must be proved by claimant, appellant charges that here Martin and Luther did nothing more than introduce into evidence its alleged cost records and challenges these as insufficient, we think without supporting the validity of that charge. As we observed with reference to the Willamette-Jackson appeal, Martin and Luther's evidence afforded prima facie proof of the value of the labor and materials.

### Inclusion of Nonlienable Items

Appellant perhaps broaches the most perplexing question of the litigation by insisting that the trial court erred in not eliminating from the amount of the claim various nonlienable items: temporary work tram (including the claim of Interstate); tools, small equipment, and supplies; equipment rental, walkie-talkie and radios; timekeepers' salaries; heaters; welders; gasoline; and propane (van gas). Comprehensive research indicates that questions of this nature have usually been decided on a case-to-case basis under statutes which although differing in the various jurisdictions in the United States have for the most part not been updated to indicate with any specificity whether many items of both labor and materials, which under modern practices are more or less essential to the building, erection, or improvement, are lienable. The early cases did not deal with cost-plus contracts and the former practices of

owners, builders, and subcontractors did not envision the rental of equipment, the far-flung operations of the contractors, and other factors which are an integral part of modern-day building. The owner and indemnitor here would have us focus on these older cases, while the appellee points to some modern cases which hold that in certain instances the cost of leasing equipment constitutes a lienable item.

A recent law review article referred to by United, 3 Willamette Law Journal 147, dealing with mechanics' liens and the cost-plus contract, containing a section on lienable items, well highlights the seriousness of the problem, and concludes that existing statutes certainly leave much to be desired, the author observing, "Presently, the best the parties can do is to anticipate what items will be needed and expressly provide for them in the contract."

A current annotation on the subject found in 3 A.L.R.3d 573 ff. and summarized in 36 Am.Jur. Mechanics' Liens § 70, p. 57 (1968 Cumulative Supplement—addition following n. 3), would seem to give an impression of majority and minority holdings as to the lienability of charges for machinery, tools, and appliances used in construction work. However, inspection of the cases cited discloses only that factual situations vary substantially the application of general rules with the courts often adopting fictions to fill the voids of statutes not fully applicable to existing conditions.

Any interpretation of our lien statutes or evaluation of precedent must of necessity be undertaken in the light of the current situation and of the basic purpose of lien statutes, namely, that they are intended to create a new means of securing the claims of particular classes of creditors and to prevent unjust enrichment arising from the enhancement in value of property from work and materials expended thereon which would otherwise go without payment. 36 Am.Jur. Mechanics' Liens §§ 3 and 4; see Ladue Contracting Company v. Land Development Company, Mo.App., 337 S.W. 2d 578, 584.

Certain cases have impressed us as having made significant pronouncements on the subject. Oliver L. Taetz, Inc., v. Groff, 363 Mo. 825, 253 S.W.2d 824, 831, in dealing with a mechanics' lien suit on a cost-plus contract, held that fuel oil used to heat a building so that plaster would not freeze before it dried and thereby be damaged or destroyed was lienable as were certain brushes and steel wool used in the construction, saying, "In order to maintain a lien for materials furnished, it is not necessary in all cases that such materials should actually have gone into the structure and form a part thereof. It is sufficient that their use was necessary, and they were, in fact, used or consumed in the building."

In Timber Structures, Inc., v. C. W. S. Grinding & Machine Works, 191 Or. 231, 229 P.2d 623, 630–631, 25 A.L.R.2d 1358, the court had occasion to pass upon the lienability of claims for making and placing beams in a building and the court's reasoning although alluding to certain items not pertinent to the present case is material:

"* * * Labor, within the meaning of the lien statute, is no less labor because it is carried on with the use of expensive machinery instead of hand tools, and its reasonable value is not determined simply by the out-of-pocket payments by the employer to the employee. Plaintiff, as a subcontractor, *furnished labor* for this particular building *of a special kind* for the special purposes and needs of the structure. The question is what is the reasonable value of this particular labor, not some other. To be able to furnish this sort of labor, plaintiff was required to construct a plant, buy and install machinery, purchase power to operate the machinery, carry insurance, pay taxes, employ engineers, and incur other expenses. It also had to consider the profit and loss angle of its operations. *All of such expenses are a part of making this particular labor available and are increments of its value.* Based upon its operating experiences as a whole, plaintiff could accurately and properly determine the

aliquot portion of its total overhead that should be distributed to the amount of labor expended upon this particular unit of work in determining its reasonable value. Because plaintiff considered these expenses in fixing the reasonable value of the particular labor involved, it did not have the effect of including the same in the charge for labor as separate items. As separate items they would be nonlienable. But these items, together with direct wages paid employes, were simply the factors considered in determining reasonable value."

Concerning the objection to the allowance of a claim for crane hire it was said, 229 P. 2d at 632, "The use of the crane was necessary * * *. The evidence shows the charge to be reasonable. We hold that this was a lienable item."

Similarly in Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co., 151 Me. 145, 116 A.2d 664, 665, the court, conceding that challenged items of profit, overhead, taxes, insurance and transportation, as such and standing by themselves, were nonlienable, said that such items could not be completely and summarily disregarded in assessing the whole evidence as to what the plaintiff had furnished.

■ Obviously, the trial court in arriving at the judgment approached the matter with a philosophy similar to that indicated in the three cases just discussed and used the items now challenged by appellant as nonlienable in arriving at the reasonable value of the labor and materials furnished. Since the basic principle underlying all mechanics' lien statutes is one of equity, that unconscionable and unjust enrichment should be prevented in the field of construction, we are convinced that the judgment of the trial court in this segment is in accord with modern holdings and should be approved.

*Inclusion of the Amount of the Claim of Interstate*

■ The challenge of the Interstate bill as nonlienable was initially made in appellant's preceding point, but the item is also attacked as having been erroneously included by the court because the foreign corporation had not qualified to do business in Wyoming prior to undertaking its work in violation of Art. 10, § 5, Wyo.Const., providing, "No corporation organized under the laws of Wyoming Territory or any other jurisdiction than this state, shall be permitted to transact business in this state until it shall have accepted the constitution of this state and filed such acceptance in accordance with the laws thereof." Appellant says that the mandate of the constitution is clear and relying upon Interstate Const. Co. v. Lakeview Canal Co., 31 Wyo. 191, 224 P. 850, for a holding that any contract entered into by a nonqualifying foreign corporation was unlawful and unenforceable, insists that a recognition of the claim by the court was improper despite the provisions of § 17–36.113, W.S.1957, C.1965, providing in part, "The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation * * *."

Appellant calls attention to the circumstance that the trial court found Interstate's claim possibly defective and accordingly did not order foreclosure thereof but notwithstanding this determined the Interstate item to be properly within the claim of Martin and Luther, which corporation was entitled to foreclose its lien.

United argues that the claim of Interstate, the real party in interest, having failed the amount could not be included in the decree of foreclosure, and on the basis of *Morris & Esher, Inc., v. Olympia Enterprises, Inc.,* Fla.App., 200 So.2d 579, 581–582, maintains that since Interstate proceeded with its own attempted lien the amount owed to it by Martin and Luther could not be a part of the latter's claim. An analysis of *Morris & Esher* does not sustain that position; the case is in no way analogous to the situation here but concerned an interlocutory appeal questioning the right of a general contractor's inclusion of amounts owed to subcontractors on the

job in his complaint to foreclose a mechanics' lien. The lower court in its order had pointed out that the Florida statutes limited such a contractor to the amount of the direct contract price and had stricken from the general contractor's complaint the allegations of sums due by it to subcontractors. The appellate court reversed as to the claimants who had not instituted suit and affirmed as to the lien claimant who had sought to enforce his claim independently, remarking, 200 So.2d at 582:

> "The trial court has the power to require at any time the addition of the subcontractors, materialmen and suppliers as parties plaintiff. * * * At the time of the final hearing, the court may require that the payments of so much of the appellant's claim as is based upon the appellant's unpaid obligations, be paid to the subcontractors."

United having presented to us on this point neither convincing authority nor cogent argument, its contention is without sufficient merit to be recognized in this appeal.

### Prejudgment Interest Is Not Recoverable on an Unliquidated Lien

 United protests the allowance of prejudgment interest for the reason that at no time prior to judgment on March 14, 1967, was there a fixed and determined amount which could have been tendered and the interest stopped and further maintains that the court chose an arbitrary date of January 1, 1965, to start the interest. There seems to be agreement between counsel for both litigants as to the applicable rule of law, namely, that interest is recoverable on liquidated but not on unliquidated claims, and that a claim is liquidated when it is readily computable by simple mathematical calculation. The propriety of the court's allowing interest depends then entirely upon the status of the claim. It could hardly be said that a claim such as that exhibited in the controversy here which required weeks to try and which presented myriad, perplexing problems arising out of the loosest kind of arrangement between the contractor and subcontractor showed a claim which was readily computable by simple mathematical calculations. General Electric Company v. E. Fred Sulzer and Company, 86 N.J.Super. 520, 207 A.2d 346, 363 (affirmed 92 N.J. Super. 210, 222 A.2d 655). Accordingly, the order of the trial court was erroneous and the allowance of interest on the claim cannot be sustained.

### Lamb Lien

 United in its brief says that the Lambs sought judgment against Martin and Luther for $7,598.49 and foreclosure against the property owner in this amount and that the court entered judgment for such sum, ordering foreclosure "in that the amount of the Lamb claim was duplicated in Martin & Luther's claim." Reference to the record indicates that the court did not make such a statement but we assume counsel may have had in mind the court's provision that Martin and Luther's judgment against Willamette for $69,187.50 and that of the Lambs against Martin and Luther for $7,598.49 were "impressed as concurrent liens upon the property of Jackson Hole Ski Corporation" and that satisfaction of the latter judgment should constitute pro tanto satisfaction of the former. Factors which would seem to have a bearing on this portion of the argument include the circumstance that Willamette's Exhibit 56 purports to be a list of the subcontracts included in the Martin and Luther lien claim and shows the Lamb amount as $3,933.32. Also, during the trial, Martin and Luther agreed that "unfortunately" this was the amount included in its claim.

In appellant's contentions in this segment it argues the Lamb lien contains items of a nonlienable nature incapable of being segregated from those properly lienable and therefore the claim should fail, alluding specifically to the amounts of materials which were used in work shacks. As we have indicated earlier in the opinion in discussing a similar problem, analysis of

the record shows the court to have been justified in arriving at a view of the testimony which would allow segregation. Concerning the further contention that even if the total lien claim of Lamb is not denied the record indicates that certain amounts totaling $960.74 should be stricken for various reasons, appellant does not support its enumeration of proposals by cogent argument or available precedent so as to require a consideration of the subject. Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 973.

## CONCLUSION

Since the judgment of the trial court concerned multiple claims and parties and was issued without determination of (a) the claims of Dubois, Richard, and Teton, and (b) without proper determination of the counterclaim of Willamette against Martin and Luther as concerned the Sandia project; and the judgment was issued without an express determination that there was no just reason for delay, Rule 54(b), W.R.C.P., it does not constitute a final order and is not subject to appeal in the view of the writer of this opinion. Nevertheless, it is the desire of the majority of the court, acceded to by the writer, that the cause be resolved in all respects in which the trial court has made a final determination and as to the aspects yet undetermined to be remanded for further disposition in conformity with the views expressed by the court.

Affirmed in part; reversed in part; and remanded with instructions.