Anne U. WHITE, Appellant (Defendant),

v.

DIAMOND INTERNATIONAL CORPO-RATION, Appellee (Plaintiff).

Anne U. WHITE, Appellant (Defendant),

v.

CHEYENNE LUMBER COMPANY, Appellee (Plaintiff).

Nos. 5795, 5796.

Supreme Court of Wyoming.

June 9, 1983.

Edwin H. Whitehead of Urbigkit & Whitehead, P.C., Cheyenne, for appellant.

Thomas E. Campbell of Hanes, Gage & Burke, P.C., Cheyenne, for appellee Diamond Intern. Corp.

Arthur Kline of Lathrop & Uchner, P.C., Cheyenne, for appellee Cheyenne Lumber Co.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

The appellee, Diamond International Corporation, in Case No. 5795 (sometimes referred to as Diamond International) and the appellee, Cheyenne Lumber Company, in Case No. 5796 (sometimes referred to as Cheyenne Lumber) brought separate actions against the appellant to enforce materialman's liens filed by each. The county court judge consolidated the cases for trial and an order was entered awarding the

appellees judgment for the amounts claimed to be due and owing in the lien statements. The judgment was appealed to the district court and an "Order on Affirmance" was entered on September 3, 1982, from which an appeal was perfected by appellant Anne White to this court. She frames the issues for our review as follows:

"1. Were not the lien statements recorded by Diamond International Corporation and Cheyenne Lumber Company fatally defective as both lacked verification and did not both lower Courts err in finding such an express statutory requirement could be excepted under W.S. § 29–16 (1957); W.S. § 29–2–101 (Republ. 1977)?"[1]

We will affirm.

## FACTS

The appellant, Anne White, entered into a contractual relationship with Woodroof Construction Company for the purpose of framing a dwelling house on unencumbered property which she owned in Laramie County. Pursuant to this agreement, William P. Woodroof, the chief executive officer of Woodroof Construction Company, opened accounts with both Cheyenne Lumber and Diamond International for building materials to be used in construction. The evidence reflects that both Woodroof and several of his employees signed invoices for materials from both suppliers and that these materials were delivered.

After some delay, appellant's home was finally framed and she paid Woodroof Construction Company according to the terms of the contract. Woodroof failed to pay on either of the accounts opened with the appellees.

On October 10, 1980, appellee Cheyenne Lumber recorded its "Lien Statement" with the Laramie County clerk, claiming a lien against White's residence in the amount of $2,424.70 for materials supplied for construction. A similar filing was accomplished by appellee Diamond International on October 28, 1980. In its "Mechanic's and Materialman's Lien" Diamond International claimed a lien against appellant's property in the amount of $5,845.54 for materials it furnished in the home's construction.

No payments on the claims were remitted and the appellees filed the previously mentioned actions. In response to the complaints, appellant filed a motion to dismiss on the ground that the lien statements had not been properly verified as required by statute. The county court judge ruled that Cheyenne Lumber's statement was properly verified and that Diamond International's lien statement, although only notarized and not verified, was not void because the defect was only of a minor nature.

On appeal to the district court, the appellant again argued that the liens were unenforceable and of no effect because of the lack of statutorily required verifications. In rejecting appellant's contentions, the district judge issued a letter opinion which found as follows:

"With reference to issue No. 1, the Court has considered the citations in the briefs of the parties and it appears that the Wyoming court has not yet passed on this issue. However, the testimony in this case clearly shows that the materials delivered by both appellees were used in the construction of the appellant's home and that the appellant was aware of that fact. In view of the fact there is no real factual issue as to the delivery of the material in this case by each of the appellees, and their use in the appellant's property with her knowledge and consent, the Court believes that the better view is that where a lien statement is notarized but not verified, that the Court should not deny its enforcement, but that equity requires the application of the provisions of Sec. 29–2–114, W.S.1977 Republished Edition, which provides, in material part as follows:

"'... provided, however that in any action begun by any ... materialman ... to enforce a lien under the provisions of this chapter, if the petition shall state and the evidence shall show

---

1. Section 29–16, W.S.1957 was recodified as § 29–2–114, W.S.1977.

that the work and labor was done and the materials furnished for the use in, upon, and about the property therein described and against which the lien is sought to be enforced, and shall also state and show that the owner or proprietor of said property or his agent, had knowledge of the fact that said work and labor was being done and said materials were being furnished for use in, upon and about said property, then and in that case any and all defects in the statement of said lien account as filed or notice given as provided in this chapter shall be disregarded; ...'

"The legislature in enacting this statute last quoted made some exceptions to the defects which might be disregarded when it included the following language in that section:

" '... provided, that said lien account as filed states the amount for which, the property against which, and the labor materials for which, a lien is claimed, so as to enable the owner or his agent to identify the same; ...'

"By making this exception (and also a further exception requiring that the notice shall be given and the lien account filed within the time limited), the legislature made it clear that it excepted all other defects than these specifically excepted from that statute (Sec. 29–2–114). Accordingly, the Court feels constrained to hold that the judgment of the county court should be affirmed."

## THE VERIFICATION ISSUE

The statutes applicable to the perfection and enforcement of the materialman's liens challenged in this case are those formerly codified as §§ 29–2–101 through 29–2–124, W.S.1977.[2] In accordance with these provisions, both Diamond International and Cheyenne Lumber filed lien statements. The contents of such a statement were governed by the provisions of § 29–2–109, W.S. 1977, which provided:

**2.** These statutes were substantially changed by the legislature and now appear at §§ 29–2–101

"It shall be the duty of every original contractor, within four (4) months, and every subcontractor, and every journeyman and day laborer, and every other person seeking to obtain the benefits of the provisions of this act [§§ 29–2–101 to 29–2–124], within ninety (90) days after the indebtedness shall have accrued, to file in the office of the register of deeds of the proper county, a just and true account of the demand due him, her, or them, after all just credits shall have been given, which is to be a lien upon such building or improvements, and a true description of all the property, or so near as to identify the same, upon which said lien is intended to apply with the name of the owner or owners, contractor or contractors, or both, if known to the person filing the lien, which in all cases shall be verified by the oath of the person filing the lien, or by some reliable person for him; provided, that the original contractor shall not file a lien prior to the expiration of sixty (60) days after the completion of his contract, and no provision contained in any contract made between the owner and the original contractor shall be construed to in any way affect or restrict the right of any subcontractor, journeyman or day laborer, to file his lien in the manner provided by this section."

As can be seen, the legislature specifically provided that "in all cases" the lien statement "*shall be verified by the oath of the person filing the lien.*" (Emphasis added.)

The appellant argues that both the county court and the district court erred in not declaring the liens void because, from her viewpoint, neither Cheyenne Lumber's nor Diamond International's lien statements were properly verified. She argues that the lack of verification is a fatal defect requiring the dismissal of Cheyenne Lumber's and Diamond International's claims.

The appellees in both appeals argue in favor of the results reached by the county and district courts. Appellee Cheyenne

through 29–2–109, W.S.1977 (1981 Replacement).

Lumber urges that its lien statement was properly verified under § 29–2–109, W.S. 1977. Diamond International does not suggest that its lien statement satisfied the verification requirement but it relies on the curative provisions of § 29–2–114, W.S. 1977. That last-cited provision reads:

"The pleadings, practice, process and other proceedings in cases arising under this chapter [§§ 29–2–101 to 29–2–124] shall be the same as in ordinary civil actions and civil proceedings in the courts of this state, except as herein otherwise provided. The petition among other things shall allege the facts necessary for securing a lien under this chapter and a description of the property to be charged therewith. *Provided, however, that in any action begun by any laborer, materialman, subcontractor or other person, to enforce a lien under the provisions of this chapter, if the petition shall state and the evidence shall show that the work and labor was done and the materials furnished for the use and benefit of the party or parties designated in the petition, and for use in, upon or about the property therein described and against which the lien is sought to be enforced, and shall also state and show that the owner or proprietor of said property or his agent, had knowledge of the fact that said work and labor was being done and said materials were being furnished for use, in, upon and about said property, then and in that case any and all defects in the statement of said lien account as filed or notice given as provided in this chapter shall be disregarded;* provided, that said lien account as filed shall state the amount for which, the property against which, and the labor or materials for which, a lien is claimed, so as to enable the owner or his agent to identify the same; provided, further, that said notice shall be given and said lien account filed within the time limited by statute for so doing." (Emphasis added.)

It is Diamond International's position that if the evidence shows that it supplied materials for the work and labor responsible for the construction of Anne White's house and that Anne White knew of the construction of improvements on her property with materials provided by Diamond International, then the lack of a verification is a defect that shall be disregarded. Appellee Cheyenne Lumber also relies on the provisions of § 29–2–114 as an argument secondary to its contention that the lien statement filed by it complied in all respects with the provisions of § 29–2–109. Of course, the appellant would have us reject the above contentions because in her opinion the lack of a verification is not a defect intended to be cured by § 29–2–114. We agree with Cheyenne Lumber and Diamond International.

Even though we have not previously addressed the question which asks whether a lien statement must be verified in order to be considered valid, we have continuously held that in order to perfect a materialman's or mechanic's lien, full compliance with all statutory requirements is necessary. *Foster Lumber Company, Inc. v. Hume,* Wyo., 645 P.2d 1176 (1982); *Tottenhoff v. Rocky Mountain Construction Company, Inc.,* Wyo., 609 P.2d 464 (1980); *Arch Sellery, Inc. v. Simpson,* Wyo., 346 P.2d 1068 (1959). This requirement of full compliance arises directly from the general purpose designed to be achieved by the lien statutes. We discussed this basic underpinning of the lien statutes in *United Pacific Insurance Company v. Martin and Luther General Contractors, Incorporated,* Wyo., 455 P.2d 664, 675 (1969), where we said:

"Any interpretation of our lien statutes or evaluation of precedent must of necessity be undertaken in the light of the current situation and of the basic purpose of lien statutes, namely, that they are intended to create a new means of securing the claims of particular classes of creditors and to prevent unjust enrichment arising from the enhancement in value of property from work and materials expended thereon which would otherwise go without payment. 36 Am.Jur. Mechanics' Liens §§ 3 and 4; see *Ladue Contracting Company v. Land Development Company,* Mo.App., 337 S.W.2d 578, 584."

Additionally, we have expressed the view that the lien statutes are to be strictly construed since they are in contravention of the common law, in view of the fact that they structure a new cause of action in suppliers of materials for building projects. *Tottenhoff v. Rocky Mountain Construction Co.,* supra.

Keeping these principles in mind, we will discuss whether either of the challenged lien statements were properly verified as required by § 29–2–109.

The lien statement filed by appellee Diamond International was signed by the local manager of the corporation, and it was notarized with the following caption attached:

> "The above and foregoing instrument was acknowledged before me, a Notary public, by Malcolm Monaghan, Manager of Diamond International Corporation on this 27 day of October, 1980."

Diamond International admits that the lien statement was only acknowledged and not verified. Rather than arguing compliance with § 29–2–109, Diamond relies solely upon the curative provisions of § 29–2–114. We will more fully discuss that argument later in the opinion.

The lien statement filed by Cheyenne Lumber contains different language, and Cheyenne Lumber contends that it was sufficiently verified. The statement contained the filing:

> " Warren L. Gullett , being first duly sworn according to law, deposes and says:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "CHEYENNE LUMBER CO.
> "[/s/] Warren L. Gullett
> Vice-Pres.
> "Subscribed in my presence and sworn to before me this 10th day of October , 1980."

Appellee's agent, however, testified that at the time of making the statement he did not take any oath but simply signed the statement in the notary's presence. On the basis of this testimony, appellant challenges Cheyenne Lumber's claim that the statement was properly verified.

The parties are correct in asserting that we have never before specifically dealt with the question of the verification required by § 29–2–109. Other courts, however, have sufficiently discussed such a requirement. The general rule to be gleaned from the case law is that the requirement that a lien statement be verified is one that cannot be overlooked and is necessary for a lien to be perfected and enforceable. *First Security Mortgage Co. v. Hansen,* Utah, 631 P.2d 919 (1981); *D.J. Fair Lumber Co. v. Karlin,* 199 Kan. 366, 430 P.2d 222 (1967); *Saunders Cash-Way Lumber & Hardware Company v. Herrick,* 179 Mont. 233, 587 P.2d 947 (1978). A good discussion of the verification requirement appears in *H.A.M.S. Company v. Electrical Contractors of Alaska, Inc.,* Alaska, 563 P.2d 258 (1977). There the Alaska statute in effect required that the lien statement be verified by oath. The court in holding that the challenged lien statements were defective noted:

> "It is established in law that a verification is a sworn statement of the truth of the facts stated in the instrument which is verified. A verification differs from an acknowledgement in that the latter is a method of authenticating an instrument by showing that it was the act of the person executing it. The text of AS 34.35.070(c)(5) is clear. It requires that the claim of lien shall 'be verified by the oath of the claimant or another person having knowledge of the facts.'
>
> "Neither of the questioned claims of lien contains a verification that the facts stated in the lien claims are true. The respective jurats merely state that the person executing the document did so on behalf of the corporation and acknowledge that the corporation executed the document pursuant to its bylaws or a resolution of the Board of Directors." (Footnotes omitted.) 563 P.2d at 260.

The court in *First Security Mortgage Co. v. Hansen,* supra, cited the above quotation from the Alaska Supreme Court in holding that a lien statement was not properly verified where the subscriber had only sworn to the truth of the proposition that he was a

person capable of filing a lien on behalf of the claimant corporation. 631 P.2d at 921. The gist of these decisions is that to satisfy the verification requirement, the claimant must indicate by sworn statement that the facts contained in the lien statement are true.

A somewhat different rule is applied in the case of *Home Plumbing and Contracting Company v. Pruitt,* 70 N.M. 182, 372 P.2d 378 (1962). The New Mexico statute in question required the lien statement to be verified by oath. The New Mexico Supreme Court noted that through judicial opinion it had been decided that substantial compliance with statutory requirements for filing and perfecting a lien was sufficient. Following this general rule, it was established in New Mexico that with respect to the verification-by-oath-requirement,

" ' * * * where it appears that the miner or mechanic has used words which by plain intendment were designed to operate as a verification, and where it is evident that the miner or mechanic was endeavoring to secure the benefit of the statute provided for such cases, and where such statement is sworn to, it ought to be regarded as a verification, within the meaning of the statute.' " 372 P.2d at 380, quoting from *Hot Springs Plumbing & Heating Co. v. Wallace,* 38 N.M. 3, 27 P.2d 984, 990 (1934).

After citing the above rule, the court went on to hold in Home Plumbing and Contracting Company that one of the challenged lien statements was not in substantial compliance because the statement failed to contain "any words whatsoever which by intendment, plain, or otherwise, 'were designed to operate as a verification.' " 372 P.2d at 380. In the same opinion, 372 P.2d at 379, the court found a second lien statement which contained the following language to satisfy the verification-by-oath requirement:

" 'State of New Mexico  )
                          ) ss
The County of Curry      )

" 'W.C. Burran, Being duly sworn, says: That he is the Secretary-Treasurer of the Home Lumber Company, a corporation, named in the foregoing claim;  that he has read said claim and knows the contents thereof;  and that the matters and facts therein started (sic) are true and correct.

" 'W.C. Burran' "

The same rule was relied upon in *Garrett Building Centers, Inc. v. Hale,* 95 N.M. 450, 623 P.2d 570, 572 (1981), where the court upheld a lien statement which contained the statement, " 'This Claim of Lien has been prepared and read by me and the contents of said lien are true and correct.' "

We cite the above cases not for the purpose of recognizing the rule of substantial compliance because we have never adopted that approach, but rather for the purpose of pointing out that even under such a rule the courts require some language in the lien statement which indicates the subscriber swears to the truth of the materials contained therein in order to comply with the verification requirement.

Considering the above, we are of the opinion that it is a difficult question to decide whether or not the lien statement filed by Cheyenne Lumber was verified by oath as required by § 29–2–109. Some courts under a substantial-compliance rule may hold that it is verified, while others under a strict-compliance rule would hold that it is not. Given the fact that the question is one of extreme difficulty, and subject as easily to a negative as well as a positive response under the case law, we prefer to uphold the Cheyenne Lumber lien like Diamond International's, through an application of the curative provisions of § 29–2–114. We note that none of the above jurisdictions had a statute in effect with provisions similar to those the legislature incorporated in § 29–2–114.

APPLICATION OF § 29–2–114, W.S.1977

At trial, both appellees relied upon the provisions of § 29–2–114 as a means whereby each of the filed liens could be enforced. As noted previously, we agree that under the facts as presented in the record, § 29–2–114 is applicable and permitted the county court to uphold the liens and the district court to affirm that decision.

Section 29-2-114 generally provides that any defect in a lien statement "shall be disregarded" if certain conditions are met. The conditions which must be satisfied in this case in order to trigger the curative language are:

1. The petition must state and the evidence must show that materials were furnished for use in, upon or about the property;

2. The petition must state and the evidence must show that the owner (Anne White) had knowledge that the claimed materials were being furnished for use in, upon and about her property;

3. The lien account must state the amount for which, the property against which, and the labor and materials for which the lien is claimed;

4. Notice of intent to file a lien must be given;

5. The lien account must be timely filed. § 29-2-114.

Relating these statutory conditions to the facts of the present case, there is no challenge concerning conditions 3, 4 and 5 listed above. The lien account properly contained the amounts claimed, the materials for which the liens were claimed, and the property on which they were claimed. Nor is there any question concerning the giving of notice, and the timely filing of the lien statement under § 29-2-109. Appellant's real contention raised with respect to the applicability of § 29-2-114, is that the lack of proper verification is not a *defect* intended to be addressed by the statute. There is also some suggestion by appellant concerning her knowledge of the delivery of the materials for which Cheyenne Lumber and Diamond International base the liens.

■ Upon reading the language used by the legislature in § 29-2-114, we are of the opinion that the statute was intended to cure any and all *defects* in the statement of

the lien account if the conditions listed above are met in the present case. We cannot accept appellant's position that the lack of verification is fatal to enforcement of the lien, yet that failure to comply with the verification requirement is not a *defect* covered by § 29-2-114. In *Sargent v. Delgado*, Wyo., 492 P.2d 193 (1972), we held that the failure to name the owner of the property in a lien statement was a defect that can be cured,[3] and we have never made distinctions between one of the required elements of a lien statement and another. To accept appellant's position would be to negate the full legislative intent of § 29-2-114, and that we cannot do. *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681 (1982). Thus, we are of the opinion that the lack of a proper verification in a lien statement is a *defect* intended to be cured by operation of § 29-2-114 if the evidence satisfies the requirements which trigger that provision.

■ We are also of the opinion that the evidence supports Cheyenne Lumber's and Diamond International's contention that the materials were delivered for use in construction of appellant's home on her property and that appellant had knowledge of that fact.[4] Under such circumstances § 29-2-114 operated to cure the claimed defect in both Cheyenne Lumber's and Diamond International's lien accounts.

The district court orders affirming the county court decisions in Case No. 5795 and Case No. 5796 are affirmed.

THOMAS, Justice, concurring and dissenting, with whom ROONEY, Chief Justice, joins.

I can concur in the result which is reached by the majority opinion with respect to Cheyenne Lumber Company, but I can only do so upon a different ground than that relied upon in the majority opinion. I must dissent with respect to the disposition

---

3. We upheld a trial court application of § 29-16, W.S.1957, the former codification of § 29-2-114, W.S.1977.

4. Appellant was at the homesite almost daily, and she testified to seeing delivery trucks and the Woodroof Construction employees using building materials.

of this case as to Diamond International Corporation. I would reverse that judgment on the ground that the lien statement was not properly verified as required by the language of § 29–2–109, W.S.1977, which provides in the part here pertinent:

" * * * which [the lien] *in all cases shall be verified* by the oath of the person filing the lien, or by some reliable person for him; * * * " (Emphasis supplied.)

The better rule is that compliance with this statute is essential in order to create a lien. The curative statute upon which the majority of the court relies, § 29–2–114, W.S.1977, becomes operative only in an action to enforce a lien. The curative statute assumes the existence of a lien which I submit does not exist in the absence of verification. I agree with the conclusion in the majority opinion that there was no verification as to the Diamond International Corporation lien statement, and consequently there was no compliance with the statute which would justify the bringing of any action to enforce a lien.

As to Cheyenne Lumber Company, I am satisfied that there was an adequate verification of the lien which was filed. Consequently there is no need to invoke the curative statute. I would not feel compelled to pursue the substantial compliance rule such as that invoked in New Mexico. *Garrett Building Centers, Inc. v. Hale,* 95 N.M. 450, 623 P.2d 570 (1981); *Home Plumbing and Contracting Company v. Pruitt,* 70 N.M. 182, 372 P.2d 378 (1962). However, if that rule were relied upon it would serve to make the conclusion of verification as to the Cheyenne Lumber Company lien an even more proper result. See also, *Stephenson v. Ketchikan Spruce Mills, Inc.,* Alaska, 412 P.2d 496 (1966); *First Security Mortgage Co. v. Hansen,* Utah, 631 P.2d 919 (1981).

The application of the curative statute in favor of Diamond International Corporation results in a holding that is a denial and denigration of the rule heretofore in effect in Wyoming that this lien statute is to be strictly construed because it is in contravention of the common law. *Tottenhoff v. Rocky Mountain Construction Company,* *Inc.,* Wyo., 609 P.2d 464 (1980). The majority of the court gives only lip service to this rule, and in fact the curative statute is applied quite liberally in favor of the materialman in this instance.

I would call attention to language from prior cases decided by this court. In *Wyman v. Quayle,* Wyo., 9 Wyo. 326, 331, 63 P. 988 (1901), this court said:

" * * * It is therefore indispensable to the *creation* of the lien that the prescribed account or statement be filed. And the statement must contain a just and true account of the demand due him after all just credits shall have been given, a description of the property sufficient to identify the same, the name of the owner or owners, contractor or contractors, or both, if known to the person filing the lien, and *it must be verified by oath.*" (Emphasis supplied.) .

In *Becker v. Hopper,* 22 Wyo. 237, 253–254, 138 P. 179, Ann.Cas. 1916D 1041, affirmed 23 Wyo. 209, 147 P. 1085, Ann.Cas. 1918B 35 (1914), this court spoke only to the *content* of the lien and said:

" * * * There is considerable apparent conflict in the decided cases on the question of what particularity is required in a lien statement. We say apparent conflict for the reason that in nearly all of the cases the decisions have been based upon the particular language used in the several statutes, in a number of which it is expressly provided that inaccuracy in the statement shall not invalidate the lien. Our statute requires a just and true account of the demand which is to be a lien; and we are of the opinion that the lien statement in this case was a substantial compliance with that requirement. * * * To be sufficient the statement should be sufficiently specific to enable one, not a party to the contract, to identify the things for which the lien is claimed. * * * "

We have noted previously that the source of our mechanic's lien statute is the law of Missouri. *Wyman v. Quayle,* supra; *Lasich v. Wimpenney,* 73 Wyo. 345, 278 P.2d 807 (1955). The Supreme Court of Missouri, in

interpreting their statute which is the source of § 29–2–109, W.S.1977, treated the statement of lien account and the requirement for verification separately. In *Mitchell Planing-Mill Co. v. Allison,* 138 Mo. 50, 40 S.W. 118, 121, 60 Am.St.Rep. 544 (1897), that court said:

> " * * * The account which this law contemplates is such a statement of the claim as fairly apprises the owner and the public of the nature and amount of the demand asserted as a lien. The account may consist of one or more items. It may be all on one side, or mutual in its showing. To be valid, however, it must disclose on its face that the demand is of a sort within the terms of the lien law. The affidavit required to verify the account may be considered along with the account itself in ascertaining the sufficiency of the latter. * * * "

See also *Moller-Vandenboom Lumber Co. v. Boudreau,* 231 Mo.App. 1127, 85 S.W.2d 141 (1935).

Other courts which have addressed the question of whether an acknowledgement is to be accepted as a substitute for the verification required by their lien statutes in order to perfect a lien have held that it is not, and that no lien is created. *H.A.M.S. Company v. Electrical Contractors of Alaska, Inc.,* Alaska, 563 P.2d 258 (1977); *Bell and Zajicek, Inc. v. Heyward-Robinson Company,* 23 Conn.Sup. 296, 182 A.2d 339 (1962); *D.J. Fair Lumber Company v. Karlin,* 199 Kan. 366, 430 P.2d 222 (1967); *Hub City Wholesale Electric, Inc. v. Mik-Beth Electrical Co., Ltd.,* Ky.App., 621 S.W.2d 242 (1981); *Saunders Cash-Way Lumber & Hardware Company v. Herrick,* 179 Mont., 233, 587 P.2d 947 (1978); *Home Plumbing and Contracting Company v. Pruitt,* supra; and *First Security Mortgage Co. v. Hansen,* supra. The Supreme Court of Utah aptly stated the proposition in *First Security Mortgage Co. v. Hansen,* supra, 631 P.2d at 922, as follows:

> "Verification is not a hypertechnicality that we can discount. Without verification, no lien is created. * * * "

To the same effect is *H.A.M.S. Company v. Electrical Contractors of Alaska, Inc.,* supra. There the Supreme Court of Alaska rejected the argument that under their statutory scheme a defective verification could be cured under that state's liberal validation statute. The court concluded that the requirement of verification contained in the statute was a mandatory condition precedent to the very creation and existence of a valid lien. In the absence of a valid lien there was no opportunity to apply the remedial portions of the mechanic's lien statute. The holding of the Alaska court is applicable in this case, as previously indicated, because until the verification requirement has been met there exists no lien which can be enforced. The bringing of an action to enforce a valid lien is a prerequisite to the invocation of the curative statute.

For the reasons stated I would affirm as to Cheyenne Lumber Company and reverse as to Diamond International Corporation.