2010 WY 4

Gaye WINTER and Jo/Etta, LLC, a Wyoming close limited liability company, Appellants (Defendants),

v.

Andy PLEASANT doing business as A. Pleasant Construction, Appellee (Plaintiff).

Andy Pleasant doing business as A. Pleasant Construction, Appellant (Plaintiff),

v.

Gaye Winter and Jo/Etta, LLC, a Wyoming close limited liability company, Appellees (Defendants).

Nos. S–09–0058, S–09–0059.

Supreme Court of Wyoming.

Jan. 12, 2010.

Representing Gaye Winter and Jo/Etta, LLC, a Wyoming close limited liability company: V. Anthony Vehar of Vehar Law Offices, P.C., Evanston, Wyoming.

Representing Andy Pleasant doing business as A. Pleasant Construction: Patrick J. Crank and Matthew D. Obrecht of Speight, McCue & Crank, P.C., Cheyenne, Wyoming. Argument by Mr. Crank.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] These combined appeals arise from a judgment relating to a construction contract (Contract). In S–09–0058, Don Winter, Gaye Winter, and Jo/Etta, LLC (Winter) ap-

peal from the district court's ruling that a materialman's lien (Amended Lien Statement) filed against their property, was valid. In S–09–0059 Andy Pleasant, doing business as A. Pleasant Construction (Pleasant Construction), appeals the district court's holding that Winter did not breach the Contract, the district court's interpretation of the Contract, and the district court's damages award. Finding that the district court committed an error of law in finding that the Amended Lien Statement was valid, we will reverse that portion of the judgment. Finding no error with respect to the district court's breach of contract analysis, contract interpretation, or damages award, we will uphold that portion of the judgment, except we will remand for the limited purposes set forth below.

## ISSUES

*Issue in S–09–0058:*

1. Whether the district court erred in finding that the Amended Lien Statement complied with the requirements of Wyo. Stat. § 29–1–301 (LexisNexis 2009)?

*Issues in S–09–0059:*

1. Whether the district court erred in finding the word "monthly," as used in the Contract, to be ambiguous?

2. Whether the district court erred in finding that the Project Manual was incorporated into the Contract?

3. Whether the district court's damages calculation is factually and legally flawed?

1. Pleasant Construction filed an original Notice of Intent to file a lien statement pursuant to Wyo. Stat. Ann. § 29–2–107 (LexisNexis 2009), which statute requires notice be given to an owner prior to filing "any claim against a building or an improvement for materials furnished stating the amount of any claim and from whom it is due." However, due to errors in the legal description of the property, as well as calculation errors in the original Notice of Intent, Pleasant Construction filed an amendment to that notice to correct the errors. The corrections led to the "Amended Lien Statement." Thus, any reference to a lien statement filed by Pleasant Construction will refer to the Amended Lien Statement.

## FACTS

[¶ 2] Winter and Pleasant Construction entered into a contract in which Pleasant Construction agreed to construct an office building for Winter (the Winters Professional Building). The Contract provided that Winter was to pay Pleasant Construction "on a Monthly basis" as work was completed. Sometime after a substantial amount of construction had been completed, Winter stopped making payments. In response, Pleasant Construction wrote Winter a letter in which it unilaterally terminated the Contract between the parties and filed an Amended Lien Statement [1] against the property pursuant to Wyo. Stat. Ann. § 29–1–301 (LexisNexis 2009).[2] Pleasant Construction then filed a two-count Complaint with the district court. In Count I, Pleasant Construction alleged breach of contract on the part of Winter for failure to make payments, and requested damages. In Count II, Pleasant Construction sought to establish the validity of the Amended Lien Statement and requested that the district court foreclose the lien and order the property sold to cover Pleasant Construction's damages. Winter counter-claimed for breach of contract for changing the construction plans without authorization, constructing the building in a defective manner, and for wrongfully terminating the contract. The district court upheld the validity of the Amended Lien Statement, found Pleasant Construction in breach of contract, but awarded Pleasant Construction damages for unpaid labor and materials expended on the project and offset that award by several deductions for breaches committed by Pleasant Construction.[3] In S–

2. Wyo. Stat. Ann. § 29–1–301 provides the procedure for perfecting a mechanic's lien.

3. The district court upheld the validity of the Amended Lien Statement in an Order in response to Winter filing a Motion to Dismiss, in which Winter sought to dismiss the portions of Pleasant Construction's case pertaining to the Amended Lien Statement, arguing that it was invalid. The district court's legal conclusion that the Amended Lien Statement was valid was then referenced throughout the district court's Findings of Fact, Conclusions of Law, and Order. In S–09–0058, Winter appeals the portions of the district court's Findings of Fact, Conclusions of Law, and Order which relate to its earlier legal

09–0058, Winter appeals the district court's ruling that the Amended Lien Statement was valid and consequently challenges the district court's damages award to Pleasant Construction. In S–09–0059, Pleasant Construction appeals the district court's decision that Winter did not breach the contract, the district court's interpretation of the Contract, as well as the amount of the district court's damages award. We will address each of these appeals in turn.

## DISCUSSION

*Issue in S–09–0058:*

*1. Whether the district court erred in finding that the Amended Lien Statement complied with the requirements of Wyo. Stat. Ann. § 29–1–301 (Lexis-Nexis 2009)?*

[¶ 3] We have repeatedly stated that

> [q]uestions of statutory interpretation are matters of law. In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. All statutes must be construed in *pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. If, however, the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction.

*Bangs v. Schroth,* 2009 WY 20, ¶ 32, 201 P.3d 442, 456 (Wyo.2009) (internal quotations and citations omitted). " 'Lien statutes create remedies in derogation of common law and

must be strictly construed.' " *Sheridan Commercial Park, Inc. v. Briggs,* 848 P.2d 811, 815 (Wyo.1993) (quoting *Burg v. Ruby Drilling Co.,* 783 P.2d 144, 152 (Wyo.1989)). Accordingly, "in order to perfect a materialman's or mechanic's lien, full compliance with all statutory requirements is necessary." *White v. Diamond Int'l Corp.,* 665 P.2d 463, 466 (Wyo.1983).

[¶ 4] The statute at issue here, Wyo. Stat. Ann. § 29–1–301(a), provides in pertinent part that, "In order to have a perfected lien pursuant to this title, a lien claimant shall file with the county clerk a lien statement *sworn to* before a notarial officer." (Emphasis added.) The notary block of the Amended Lien Statement reads:

> On this 11th day of May, 2006, before me personally appeared Robert T. McCue, to me personally known, who being by me duly sworn, did say that he is the attorney for A. Pleasant Construction and that the above and foregoing AMENDED LIEN STATEMENT was signed on behalf of A. Pleasant Construction by authority of Andy Pleasant.[4]

Winter asserts that the Amended Lien Statement is invalid, arguing that it does not meet the requirements of § 29–1–301(a) because the information contained in the Amended Lien Statement was not "sworn to" as being true and correct. Alternatively, Pleasant Construction argues that the Amended Lien Statement complies with the "sworn to" provision in § 29–1–301(a) because the notary block indicates that the claimant was "duly sworn," and that is all that the statute requires.

[¶ 5] When addressing this issue, the district court correctly pointed out

> There is no need for the claimant to swear to his own identity—that is the vocation of the notary public. In a perfect world, however, the phrase would specify that the claimant has sworn to the truthfulness of the document or, at a minimum, that the

---

conclusion that the Amended Lien Statement is valid.

4. The notary block also contained the Notary Public's signature, commission expiration date and official seal. The validity of the Amended Lien Statement is not affected by Robert T.

McCue signing on behalf of, and as attorney for, A. Pleasant Construction, as we have held that an attorney may create and sign a lien statement on behalf of a client. *Stricker v. Frauendienst,* 669 P.2d 520, 521 (Wyo.1983).

claimant has been "duly sworn upon [h]is oath," as directed by the *Notaries Public Handbook*.

Notwithstanding this observation, the district court concluded that "[a]lthough not ideal, the notary certificate included in the Amended Lien Statement is acceptable. The lien is valid."

[¶ 6] Although we agree with the district court's observations, we do not agree with the conclusion that the lien statement is valid. We find that for a lien statement to be valid, the plain language of the phrase "sworn to" in the lien statute requires that the lien affiant swear to the truth and accuracy of the lien statement. We have noted that a statutory " '[i]nterpretation should not produce an absurd result.' " *Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 9, 50 P.3d 323, 326 (Wyo.2002)). Wyo. Stat. Ann. § 32–1–105(b) (LexisNexis 2009) provides that "[a] notary . . . establishes the identity of the person signing the document and attests that the signature on the document was made in his presence." Given the fact that § 32–1–105(b) requires that the notary public determine the identity of the affiant, it would make little sense to conclude that the affiant need only swear to his or her identity. Moreover, swearing to one's identity does nothing to assure the factual accuracy of the lien statement. Interpreting § 29–1–301(a) in any way except to require that the accuracy and truth of the contents of the lien statement be "sworn to" would lead to an absurd result.[5]

[¶ 7] The Amended Lien Statement here fails to indicate that the affiant, Robert T. McCue, was swearing to the accuracy of the lien statement. Instead, the Amended Lien Statement, merely indicates that he "duly swor[e]" to his identity and/or to his authority as a representative of A. Pleasant Construction. That statement is insufficient to create a valid lien statement under the plain language of § 29–1–301(a). The district court erred as a matter of law when it concluded that the Amended Lien Statement was valid.[6]

### Issues in S–09–0059:

[¶ 8] The three issues in this appeal directly relate to the Contract between the two parties as well as a separate Project Manual, which sets forth in greater detail the parties' agreement. It is important to determine whether in addition to the Contract, any part of the Project Manual also governs the parties' relationship, because both parties argue that the other was the first to breach the agreement, and because Pleasant Construction argues that the district court's findings of breach and damages were flawed because of its erroneous incorporation of the Project Manual into the Contract.

### 1. Whether the district court erred in finding the word "monthly," as used in the Contract, to be ambiguous?

[¶ 9] Whether a term in a contract is ambiguous is a matter of contract interpretation.

---

5. We acknowledge Pleasant Construction's argument that the predecessor statute to § 29–1–301(a), Wyo. Stat. § 29–11 (1957) (the legislature renumbered and recodified the statutes in 1977, which resulted in the numerical change from § 29–11 to § 29–1–301), was amended in 1981, at which time the legislature changed the statute from requiring that a lien statement ". . . in all cases shall be verified by the oath of the person filing the lien . . ." to its current form requiring that a lien statement be "sworn to." However, this change does not affect our interpretation of the current version of § 29–1–301(a).

6. Winter additionally argues that if we find the Amended Lien Statement to be invalid, this would in some way invalidate any subsequent damages award to Pleasant Construction. In

other words, Winter argues that a valid damages award is dependent on a valid lien. We reject this argument because it is the existence of a debt, or in this case, a damages award, that allows for the existence of a lien, not the other way around. 51 Am.Jur.2d *Liens* § 13 (2009). "Because a lien is a right to encumber property until a debt is paid, it presupposes the existence of a debt. If there is no debt in the first instance, there is no need for a lien, so a lien cannot legally exist or attach. In other words, without a debt, there can be no lien. Although a lien is an incident of, and inseparable from, the debt it secures, it is distinct from that debt; liens relate to assets or collateral, while the indebtedness underlying a lien appertains to a person or legal entity (the debtor)." *Id.*

Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts.

*Cent. Wyo. Med. Lab., LLC v. Med. Testing Lab, Inc.,* 2002 WY 47, ¶ 16, 43 P.3d 121, 127 (Wyo.2002) (internal citations omitted).

[¶ 10] The pertinent part of the Contract reads as follows:

That for in consideration of the payments and agreements hereinafter mentioned, the Contractor will commence and complete the scope of work to supply and erect the Winters Professional Building at 375 W. Flaming Gorge Way, Green River, Wyoming as outlined in the project manual, plans and specifications supplied by Plan One/Architects, dated 1/24/2005, for the sum of $3,333,188.36.

. . . .

A. Pleasant Construction will continue to work with the Owner, Architect, Engineers and Sub–Contractors throughout the project on value-engineering solutions. Any cost savings, as well as Contract changes will be addressed through a written Change Order Authorization as they occur. The *Owner* will pay the *Contractor* on a Monthly basis as Pay Applications are submitted for the percentage of work completed, with final payment due within 20 days of completion. On each application 10% retainage will be held. This will be due and payable upon submitting the final application and proof of substantial completion.

. . . .

[¶ 11] Pleasant Construction submitted a Pay Application to Winter on November 30, 2005, for work which had been done on the Winters Professional Building. However, that was never paid by the time Pleasant Construction terminated the Contract on January 17, 2006. The district court found that the Contract was ambiguous with respect to when Winter was required to make payments to Pleasant Construction for completed work because the word "monthly" was ambiguous in that it did not set forth a definite time for payment. The district court noted that the term "monthly" was not defined within the Contract, and stated that the indefiniteness conveys a double meaning and therefore ambiguity arises as to when payments were due. The consequence of this finding was that the district court then determined that Winter was not in breach of contract for failure to make timely payments to Pleasant Construction.

[¶ 12] On appeal, Pleasant Construction argues that the district court's finding is factually and legally erroneous. Specifically, Pleasant Construction argues that the term "monthly" cannot have any other meaning than once a month. We find it unnecessary to determine whether the district court correctly found the term "monthly" to be ambiguous because we "may affirm its decision on any legal grounds appearing in the record." *Yeager v. Forbes,* 2003 WY 134, ¶ 12, 78 P.3d 241, 246 (Wyo.2003). As we will discuss further below, prior to Winter's non-payment, Pleasant Construction was in material breach of contract for changing the Contract without first obtaining written change order authorization, failing to comply with the plans and specifications, and for not building the Winters Professional Building in a workmanlike manner. We have stated that " 'the party first committing a substantial breach of contract cannot complain that the other party . . . fails to perform.' " *Baker v. Speaks,* 2008 WY 20, ¶ 14, 177 P.3d 803, 807 (Wyo.2008) (quoting *Williams v. Collins Commc'ns, Inc.,* 720 P.2d 880, 891 (Wyo.1986)). Accordingly, Winter was not in breach for failing to make further payments.

**2. Whether the district court erred in finding that the Project Manual was incorporated into the Contract?**

[¶ 13] The district court stated that "[t]he Parties' contract references and, consequent-

ly, incorporates the Project Manual, plans, and specifications dated January 24, 2005." It further concluded that

> [Pleasant Construction] breached the contract in four ways. First, [it] failed to adhere to the specifications set forth in the contract plans and Project Manual. Second, [it] failed to provide written change order documents to reflect cost-saving modifications to the contract. Third, [it] failed to meet [its] duty to provide a building completed in a skillful, workmanlike manner. Finally, [it] improperly terminated the contract in a manner that violated the requirements of the Project Manual.

Pleasant Construction asserts that the district court erred as a matter of law when it made these legal conclusions. To support this claim, Pleasant Construction argues that the district court's finding that Pleasant Construction was in breach of contract was based on the district court improperly incorporating the entire Project Manual into the Contract, instead of only incorporating the "plans" and parts of the "Specifications" contained in the Project Manual that relate to "the scope of work to supply and erect ..." the Winters Professional Building as called for by the plain language of the Contract.

[¶ 14] We have repeatedly stated that "[w]e will affirm a district court's action on appeal if it is sustainable on any legal ground appearing in the record even if the legal ground or theory articulated by the district court is incorrect." *Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 21, 114 P.3d 1268, 1279 (Wyo.2005). Accordingly, because none of the breaches are dependent on finding that the Project Manual, in whole, was incorporated into the Contract, we find it unnecessary to determine whether the district court did in fact find that the entire Project Manual was incorporated by reference into the Contract, and if it did, whether or not that was error. For instance, the first breach relies on a part of the Project Manual that Pleasant Construction admits was incorporated into the Contract, and the remaining three breaches exist as a result of the Contract itself, not as a result of any part of the Project Manual. We will address each breach in turn.

[¶ 15] The first breach pertains to Pleasant Construction's failure to adhere to the specifications set forth in the Contract plans and Project Manual. Specifically, the district court cited three instances where construction defects violated specifications found in the Project Manual. All three of the sections that the district court cited, which related to the corresponding defects, were found in "Division 5 — Metals" of the Project Manual. While countless pages of Pleasant Construction's briefs are devoted to arguing that the parties did not intend to incorporate the entire Project Manual into the Contract, Pleasant Construction admits that Division 5 was incorporated. After arguing that Division 1 of the Project Manual was not intended by the parties to be incorporated into the Contract, Pleasant Construction states that

> The remaining portions of the "Specifications" — Divisions 2 to 16, all specify the types of materials and construction techniques that must be used during the construction of the Winters Professional Building. These "Specifications" all directly relate to the "scope of work to supply and erect ..." the Winters Professional Building and were incorporated into the Contract of Agreement.

Therefore, Pleasant Construction's argument that the district court erred in incorporating the project manual into the Contract does not apply here, where Pleasant Construction has conceded that the sections of the project manual it allegedly breached were incorporated.

[¶ 16] In addition to claiming that the district court erred as a matter of law in incorporating the Project Manual, Pleasant Construction argues that the district court's conclusions regarding its breaches were contrary to the evidence. Our task is to determine whether the record contains sufficient evidence to support the district court's factual findings relating to the breach of this portion of the Project Manual. The pertinent portion of Division 5 of the Project Manual set forth the requirements for the location of embed plates and anchor bolts, as well as requiring that the building be constructed so as to be plumb. The defects noted by the district court included some

embed plates being rotated and some that were missing altogether, so that they could not be properly welded; many anchor bolts did not sufficiently project or were also missing altogether; and the building was out of plumb. The record supports the district court's findings concerning these breaches. For instance, Robert Lower (Lower), a structural engineer, testified that there were anchor bolts that "insufficient[ly] project[ed] from the top of the concrete to place a nut on top of the baseplate and thread it onto the anchor bolt." He also testified that three embed plates were rotated so that "one side . . . had been welded adequately, on the other side there was not an opportunity to weld it, so we designed an additional plate that would be welded to our connection and bolted to the wall. . . ." Lower further testified that in one section of the building an "embed plate was missed altogether." Eric Green, a structural engineer/consultant, testified that there were "some improperly connected anchor rods, some welds that were improper, and some bolting connections that were improper." He also testified that there was "improper alignment and plumbness of the framing." Lower testified that "the columns along the west wall have out of plumbness; a couple of the columns over 2 inches out of plumb from the main floor to the second floor. Most of the columns have a little bit of out of plumbness." Because Pleasant Construction admits that this section of the Project Manual was incorporated into the Contract, and sufficient evidence in the record supports a finding that Pleasant Construction failed to comply with the requirements of the section, we cannot say that the district court erred in finding the same.

[¶ 17]   The second breach relates to Pleasant Construction's failure "to provide written change order documents to reflect cost-saving modifications to the contract." As noted above, whether the district court properly interpreted the parties' Contract with respect to this breach, does not depend on whether or not the Project Manual was partially or fully incorporated into the parties' agreement, as this breach relates to the express terms of the Contract, itself.

[¶ 18]   The Contract provides, in part, that, "Any cost savings, as well as Contract changes will be addressed through a written Change Order Authorization as they occur." The original plans were created on January 24, 2005. The plans were then amended numerous times and those amendments were eventually consolidated into a new set of plans on July 25, 2005, which plans did not contain features included in the original plans such as a waterfall and the curving staircase in the lobby of the building. Winter testified that she received only the January 24, 2005 plans and never received the amended July 25, 2005 plans, containing the cost-saving changes. Although Pleasant Construction testified that Winter received a copy of the changes, there is no evidence to support this assertion. Charles Vanover, the architect for the Winters Professional Building, testified that although he was aware that changes had been made to the original plans in order to reduce the price of the building, including removing the waterfall and fireplace, he did not discuss those changes with Winter. Accordingly, we cannot say that the district court committed an error in finding Pleasant Construction in breach of contract for failing to obtain written "Change Order Authorization" as required by the Contract.

[¶ 19]   The district court also found that Pleasant Construction had "failed to meet [its] duty to provide a building completed in a skillful, workmanlike manner." Again, this breach does not depend on the partial or full incorporation of the Project Manual because, as the district court pointed out, citing *Alpine Climate Control, Inc. v. DJ's, Inc.*, 2003 WY 138, ¶ 12, 78 P.3d 685, 689 (Wyo.2003), "[e]ach building or construction contract includes either an express or an implied warranty ensuring 'the work will be sufficient for a certain purpose and will be performed in a skillful, careful, diligent, and workmanlike manner.'"

[¶ 20]   Pleasant Construction argues that the district court incorrectly found it in breach of this standard because Winter was the first to breach by failing to make payments and, but for Winter's breach, Pleasant Construction would have continued to complete the work and would have fixed the

"minor construction errors." However, as noted above, Winter's nonpayment did not constitute a breach of contract due to the ambiguity of the word "monthly." *See supra* ¶ 11. Thus, Pleasant Construction's argument fails because it terminated the contract without first fixing the construction defects. As indicated above, there was sufficient evidence in the record supporting the district court's finding that Pleasant Construction's work resulted in numerous construction defects which were not in conformity with the parties' agreement, which left Pleasant Construction in breach of contract. *See supra* ¶ 15. Furthermore, when asked whether Pleasant Construction thought it had ever "done worse work than [it] did on the Winter building," Andy Pleasant responded "[n]o." Many of the experts testified similarly. Lower testified that he had never seen a building that Pleasant Construction constructed so out of plumb, and that out of the eight hundred or so buildings Lower had worked with in his twenty years of experience, "probably half a dozen" were as out of plumb as the Winters Professional Building. Eric Green testified that in his ten years engaged in forensic structural engineering, he had only seen one other building as out of plumb as the Winters Professional Building. Even Charles Vanover, the architect for the Winters Professional Building, testified that he agreed with Andy Pleasant's testimony that he had never seen Pleasant Construction do worse work than it had on the Winters Professional Building. The district court did not err in finding that Pleasant Construction breached the Contract by failing to perform the work in a workmanlike manner.

[¶ 21] Finally, the district court found Pleasant Construction in breach of contract for terminating the Contract in violation of a provision of the Project Manual. Section 14.1.1 of the Project Manual provides

The Contractor [Pleasant Construction] may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

. . . .

.4 the Owner [Winter] has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

Section 2.2.1 of the Project Manual states

The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

[¶ 22] Pleasant Construction sent a letter to Winter on January 4, 2006, stating that "A. Pleasant Construction is going to suspend performance until the two pending Pay Applications have been paid as provided in the contract and until you have assured A. Pleasant Construction that future Pay Applications will indeed be paid as they are submitted." The parties then met on January 13, 2006, to discuss Winter being able to provide financial assurance. Gaye Winter testified that Pleasant Construction refused to review documentation evidencing Winter's ability to meet future financial obligations. Pleasant Construction then terminated the Contract in a letter dated January 17, 2006. The time from Pleasant Construction's work stoppage on January 4, until it terminated the Contract on January 17, did not total 30 days, as required by Section 14.1.1.4 of the Project Manual. As a result, the district court found Pleasant Construction in breach of the contract.

[¶ 23] Pleasant Construction argues that the district court erred when it made this determination, because the district court erroneously concluded that the Project Manual was incorporated into the Contract. Again, it is unnecessary for us to determine whether this provision of the Project Manual was incorporated into the Contract or whether

Pleasant Construction breached it, because even if these provisions were not incorporated into the Contract, Pleasant Construction's termination of the Contract breached the Contract itself. Pleasant Construction had no legal justification for terminating the Contract in response to Winter's unwillingness to pay. Prior to Winter's unwillingness to pay, Pleasant Construction had materially breached the Contract, as discussed above, due to the numerous construction defects and changing the plans without written change order documentation. *See supra* ¶ 15–20. Accordingly, the district court did not err when it found Pleasant Construction in breach of contract for terminating the Contract.

### 3. Whether the district court's damages calculation is factually and legally flawed?

■■■ [¶ 24] Pleasant Construction argues that the district court's damages calculation was clearly erroneous, due to finding Pleasant Construction in breach of contract and because the district court made certain deductions from the damages award which were not supported by the record. A district court's determination as to the amount of damages to award is a question of fact. *Velasquez v. Chamberlain,* 2009 WY 80, ¶ 27, 209 P.3d 888, 895 (Wyo.2009).

This Court applies a clearly erroneous standard when reviewing findings of fact made by the district court after a bench trial. A finding is clearly erroneous when, even though substantial evidence supports it, the reviewing court is left with the definite and firm conviction that a mistake was made.

We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Although the factual findings of a trial court are not entitled to the limited re-

view afforded a jury verdict, the findings are presumptively correct.

This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. Findings may not be set aside because we would have reached a different result.

*Id.* at ¶ 14, at 891 (internal citations omitted).

■■■ [¶ 25] "In general, the legal remedy for a breach of contract is the award of damages designed to place the plaintiff in the same position in which he would have been had the contract been fully performed, less proper deductions." *Dewey v. Wentland,* 2002 WY 2, ¶ 52, 38 P.3d 402, 420–21 (Wyo. 2002). In awarding damages to Pleasant Construction, the district court stated "[Pleasant Construction] is entitled to the value of labor and materials expended in [Winter]'s project if those values are demonstrated with prima facie evidence. However, because of [its] breach of contract, [Pleasant Construction] must reimburse [Winter] for defective construction and overcharges as supported by the evidence." This case is different than the typical damages case for a breach of contract, in that the breaching party, Pleasant Construction, was awarded damages, instead of the non-breaching party, Winter. However, because "[t]he law will not put a victim in a better position than he would have been in had the wrong not been done," *Alcaraz v. State,* 2002 WY 57, ¶ 16, 44 P.3d 68, 73 (Wyo.2002), Winter was required to pay for the labor and materials expended by Pleasant Construction, which resulted in a net damages award for Pleasant Construction.[7]

[¶ 26] The following is this Court's best effort to illustrate the district court's dam-

---

7. If Winter were not required to pay for the labor and materials provided by Pleasant Construction, Winter would stand to profit from Pleasant Construction's breach, which would be contrary to the goal in awarding damages for breach of

contract. *WSP, Inc. v. Wyo. Steel Fabricators & Erectors, Inc.,* 2007 WY 80, ¶ 19, 158 P.3d 651, 655 (Wyo.2007) ("[d]amages should compensate for an individual's loss and no more.").

ages calculation, which is a difficult task due to the numerous calculations involved. The district court awarded Pleasant Construction a gross damages award in the amount of $252,121.34 for time and labor expended on the project which had yet to be paid by Winter. To arrive at this gross damages award, the district court began by taking $875,695.26, the total amount billed to Winter, and subtracting from that amount $651,307.07, the total amount paid by Winter, but then adding back in an additional $18,686.45 that had not been paid by Winter, and subtracting a stipulated deduction in the amount of $62,477.00, for a gross damages award of $252,121.34. Interestingly enough, there appears to be a mathematical error in this portion of the district court's calculation which was not pointed out by either party. This Court's calculation of gross damages equals $180,597.64 ($875,695.26 less $651,307.07 plus $18,686.45 less $62,477.00), however, the district court calculated the gross damages award as $252,121.34. The difference between the district court's subtotal and this Court's subtotal is $71,523.70. It is unclear from the record whether there was a legitimate $71,523.70 deduction which the district court inadvertently left out of its damages calculation, or whether this was a mathematical miscalculation. In any case, while this omission/error could have a significant impact on the total judgment amount, it does not affect our analysis with regard to the appropriateness of the deductions and calculations. This Court will not further address the matter, but instead, will remand to the district court to allow it to address the apparent inconsistency.

[¶ 27] From the gross damages award of $252,121.34, the district court made several deductions due to the fact that Pleasant Construction was in breach of contract, most of which are contested by Pleasant Construction and are consequently the focus of the remaining portion of this opinion. These deductions were: $20,000 to correct overbill-ing for removal of cement foundation; $90,000 to correct the "out-of-plumbness" of the building; $30,266.24, representing the amount Winter paid another contractor to fix Pleasant Construction's mistakes; $16,461.45, representing the amount of structural steel to complete the construction of the stairs.[8] Once these deductions were applied to the gross damages award of $252,121.34, Pleasant Construction was left with a final damages award of $95,393.65.

[¶ 28] We find that the district court's damages calculation were not clearly erroneous as all four of the challenged deductions were supported by testimony and evidence in the record. With regard to the $20,000 deduction to correct an overbilling error, Pleasant Construction does not contest this deduction in its brief, so we will not address it. As to the $90,000 "out-of-plumbness" deduction, the district court noted that "[Pleasant Construction] admitted that [its] work was, at least partially, to blame for moving the Winters Professional Building out of plumb." Furthermore, there was expert testimony by Dinesh Sheth (Sheth) supporting the $90,000 figure to fix the problem, which the district court found to be reasonable. Pleasant Construction argues that the district court's reliance on Sheth's testimony relating to the "out-of-plumbness" damages was clearly erroneous because the district court found Sheth's testimony relating to other damages to be speculative and not credible. The district court conceded that it was critical of Sheth's testimony, but found "that his calculations and proposed methods to correct the plumbness of the building are reasonable." Sheth explained how he came to his estimation on the cost of fixing this problem by providing an estimation of the cost of equipment and labor which would be necessary. Furthermore, Sheth was not the only expert to testify to the severity of the "out-of-plumbness" of the building. Engineers Robert Lower and Eric Green also testified. Although neither estimated a spe-

---

8. The deduction for the stairs was derived as follows: The total allocated amount of structural steel was $285,385.50, and out of that amount, the estimated amount complete was $256,846.95, which left $28,538.55 to complete the remaining stairs. Expert testimony indicated that it would actually cost approximately $45,000 to complete the remaining stairs, instead of $28,538.55, so the district court took the difference between $45,000 and $28,538.55, which is $16,461.45, and deducted that from the damages award to Pleasant Construction.

cific dollar amount for fixing the plumbness of the building, both did indicate that the fix would be expensive because it was a widespread problem. We find that there was sufficient evidence presented to the district court to support the substantial cost of correcting the "out-of-plumbness," so we cannot say that the $90,000 deduction was clearly erroneous.

[¶ 29] There was also sufficient evidence presented to support the $30,266.24 deduction for the cost of paying a different contractor to fix the mistakes made by Pleasant Construction. Following Pleasant Construction's termination of the Contract, Winter hired Davis Contractors to continue the work on the Winters Professional Building. According to Don Davis's testimony, approximately forty to forty-five percent of his company's time spent working on the Winters Professional Building was rework to correct the defects left by Pleasant Construction.[9] Pleasant Construction argues that Davis's estimation that forty to forty-five percent of his work was "rework" was speculative and not supported by anything showing how he arrived at that calculation. However, the district court found his estimate of forty percent credible. "Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses...." *Lieberman v. Mossbrook,* 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo.2009) (quoting *Cook v. Eddy,* 2008 WY 111, ¶ 6, 193 P.3d 705, 708 (Wyo.2008)). Having reviewed the record, we are not "left with the definite and firm conviction that a mistake has been committed." *Id.* The district court correctly deducted $30,266.24 from the damages award to Pleasant Construction.

[¶ 30] Finally, there was sufficient evidence to support the $16,461.45 deduction for additional steel. In making this deduction, the district court stated, "[Winter] is entitled to damages for [Pleasant Construction]'s failure to properly budget for 'Structural Steel' to include the cost of the five sets of stairs that would be necessary for completion of the Winters Professional Building." The total allocated amount for structural steel was $285,385.50, and out of that amount, the estimated amount for completed work was $256,846.95, which left $28,538.55 to complete the remaining stairs. Expert testimony by Sheth indicated that it would actually cost approximately $45,000 to complete the remaining stairs, instead of $28,538.55. Accepting this testimony, the district court took the difference between $45,000 and $28,538.55, equaling $16,461.45. The district court then deducted $16,461.45 from Pleasant Construction's damages award. Pleasant Construction does not contest this amount or the calculation by Sheth as inaccurate; Pleasant Construction's only argument relating to the structural steel damages is that Winter was the first to breach so no deduction should have been made. However, having already determined that Pleasant Construction was the party in breach, and also having found expert testimony supporting the amount of damages with respect to structural steel, we cannot say that the district court was clearly erroneous in these findings and calculations.

## CONCLUSION

[¶ 31] We hold that the district court erred as a matter of law when it found that the Amended Lien Statement was valid. Accordingly, we reverse that portion of the district court's decision. However, the invalidity of the Amended Lien Statement does not affect the damages portion of this opinion. We conclude that the district court did not err by finding that Winter had not breached the contract, by finding Pleasant Construction in breach of contract, or in calculating damages, with the exception of the potential mathematical error. We will, therefore, uphold those portions of the district court's decision. We do, however, find it necessary to remand this case to the district court in order for it to address the apparent error in the damages calculation.

9. The total amount billed to Winter by Davis    Contractors was $75,665.60.